[Civ. No. 895.   Third Appellate District.—August 8, 1911.]

H. H: HOGAN, Petitioner, v. THE SUPERIOR COURT OF THE STATE OF CALIFORNIA IN AND FOR THE COUNTY OF MERCED, and E. N. RECTOR, Judge of Said Court, Respondents.

PROHIBITION—OFFICE OF WRIT—QUESTION OF JURISDICTION.—The sole question which is presented or may be considered in a proceeding upon a writ of prohibition is one of jurisdiction. The office of the writ is to arrest "the proceeding of any tribunal, corporation, board, or person, whether exercising functions judicial or ministerial, when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board or person."

ID.—GENERAL RULE AS TO WRITS GOING TO JURISDICTION—ERRORS NOT REVIEWABLE.—Neither the writ of prohibition nor any other writ, whose sole object is to try the question of jurisdiction, can be made to subserve the purpose of a writ of error, or be extended in its corrective scope to the review of errors of law committed by an inferior tribunal, corporation, board or person within the jurisdiction.

ID.—JURISDICTION OF APPEAL FROM JUSTICE'S COURT—SUFFICIENCY OF EVIDENCE TO JUSTIFY VERDICT NOT REVIEWABLE.—Where the superior court has jurisdiction of an appeal from a justice's court, the question of the sufficiency of the evidence to justify the verdict in the justice's court cannot be considered or reviewed upon the writ of prohibition.

ID.—DECISION OF APPEAL IN PARTICULAR WAY NOT REVIEWABLE.—The superior court has jurisdiction to determine the appeal from the justice's court as it deems best, whether it be to affirm, modify or reverse the judgment of the justice's court; and prohibition will not lie to compel its decision in any particular way.

ID.—INSUFFICIENT COMPLAINT IN CRIMINAL ACTION—PROHIBITION APPLICABLE.—If the complaint in a justice's court should show on its

face that it has no jurisdiction of a criminal action, appealed to the superior court, prohibition will lie to prevent the superior court from entertaining such appeal.

ID.—COMPLAINT SHOWING OFFENSE.—Where the complaint in the justice's court shows with sufficient clearness that it has jurisdiction of the offense charged, the superior court has jurisdiction upon appeal, and prohibition will not lie in such case.

ID.—CHARGE IN WORDS OF STATUTE—DESTRUCTION OF CROP OF GRAIN —ALTERNATIVE PUNISHMENT.—A complaint charging the misdemeanor defined by section 604 of the Penal Code, for the destruction of a standing crop of grain, in the language of the statute, with an averment of ownership of the grain, is sufficient, without alleging that the case is one "for which a punishment is not otherwise prescribed by this code."

ID.—RULE AS TO EXCEPTIONS IN STATUTES—PLEADING.—It is only when an exception in a statute is included in the description of the offense charged that the exception must either be affirmed, if applied to the description, or negatived, if not so applied, but it must be pleaded in either case, as constituting part of the offense charged. But where the exception is no part of the offense charged, but deals merely with the matter of punishment for the crime described in the statute, it need not be pleaded.

ID.—CONSTRUCTION OF SECTION 604 AS TO PUNISHMENT.—The words of section 604, "in any case for which a punishment is not otherwise prescribed by this code, is guilty of a misdemeanor," simply means, in case no other punishment is elsewhere prescribed, that the crime defined shall be punished as a misdemeanor by the infliction of the penalty prescribed therefor in section 19 of the Penal Code.

ID.—OTHER CODE PROVISIONS AS TO DISTINCT SIMILAR CRIMES · NOT EXCEPTIONAL.—The felony provided for in section 600 of the Penal Code, for the burning of any growing or standing grain, and the misdemeanor punishable for malicious injury to the freehold, by maliciously injuring or severing anything attached thereto, or the produce thereof, in section 602 of the Penal Code, are distinct, though similar, crimes, but not exceptional to the offense described in section 604 of that code, and need not be pleaded or referred to in describing the offense punishable thereunder.

ID.—DUTY OF COURT IN DISPOSING OF APPEAL—UNJUST VERDICT.— Though the action of the court in the disposition of the appeal from the justice's court cannot be controlled by the writ of prohibition, yet, where its opinion in affirming the decision clearly shows that the verdict was a blot upon justice, it was its plain duty, in that case, having power to do so, to order it set aside, and to give the appealing defendant an opportunity to be tried, according to due process of law.

PETITION for writ of prohibition to the Superior Court of Merced County. E. N. Rector, Judge.

The facts are stated in the opinion of the court.

Carroll Cook, and Wm. Hoff Cook, for Petitioner.

F. G. Ostrander, and H. S. Shaffer, for Respondents.

HART, J.—This is an application for a writ of prohibition to restrain the respondents from making any order, other than to reverse or modify the same, in relation to a certain judgment, rendered and entered in a criminal action against the petitioner by the justice's court of township No. 5 of Merced county, and from which an appeal has been taken to and is now pending before the respondent, superior court.

The questions presented for discussion and decision are raised by a general demurrer which has been interposed to the petition by the respondents.

The averments of the petition disclose the following facts: On the seventeenth day of April, 1911, a complaint was filed in the justice's court of township No. 5, in the county of Merced, charging the petitioner with having violated the provisions of section 604 of the Penal Code. Said section reads as follows: "Every person who maliciously injures or destroys any standing crops, grain, cultivated fruits or vegetables, the property of another, in a case for which a punishment is not otherwise prescribed by this code, is guilty of a misdemeanor."

The complaint upon which the petitioner was tried is in the following language: "The said Howard H. Hogan on or about the 15th day of April, A. D. 1911, in the said county of Merced, state of California, did willfully, unlawfully and maliciously injure and destroy standing crop of grain, then and there the property of the said Mary Collier, situated at the southeasterly part of section 5, T. 7 S., R. 10 E., in Merced county, California, said land and premises and crop being then and there the property of the said Mary Collier."

On the twenty-fifth day of April, 1911, the petitioner, having previously been arraigned upon and entered a plea of

16 Cal. App.—50

"not guilty" to the charge thus preferred against him, was
put upon his trial upon said complaint, and the jury, by
whom the facts were tried, returned the following verdict:
"We, the jury, in the above-entitled cause, find the defendant
guilty as charged." Thereupon, the justice of the peace,
pronouncing judgment against petitioner, sentenced him to
a term of six months in the county jail of Merced county.

As seen, the petitioner, in due time, took an appeal to the
superior court of Merced county upon a statement of the case
settled by the justice of the peace as required by law. (Pen.
Code, sec. 1468.) The appeal subsequently came on for hear-
ing before the respondents, and, after arguments thereon, the
same was submitted for decision and taken under advisement.
On the sixteenth day of June, 1911, the respondent, judge of
the superior court, without making any order in the premises,
filed a written opinion in which he announced that the con-
clusion at which he had arrived on said appeal was that he
had discovered no substantial reason justifying an order
other than one affirming the judgment. Embodied in the
petition herein is a portion of the written opinion referred
to and we shall here reproduce the same, not because in our
judgment it has any bearing on the ultimate question sub-
mitted for decision by this court—that of jurisdiction—but
solely for the purpose of making some suggestions which,
under the circumstances of the case as it is presented here,
may be offered with no impropriety:

"The court has given this matter particular consideration
for the reason that it appears, very clearly, from the state-
ment that the defendant was not, to say the least, 'in the
hands of his friends' in the court below.

"The sentence of the court that the defendant be impris-
oned in the county jail for the term of six months seems
unreasonably severe. This is the maximum sentence of im-
prisonment that could be imposed; and the law contemplates
that it shall not be imposed in cases like this except where
express malice clearly appears.

"The peace and dignity of the people of the state of Cali-
fornia would probably not have been considered by the com-
plaining witness to have been invaded by the defendant, and
this case would, therefore, never have had any existence at all
if the defendant had granted her demand for the written

agreement to furnish her lands with water. In such circumstances she would probably have accepted, most gladly, the defendant's offer to pay liberally for all damages done to the land and crop in making his repairs. There, I say, the sentence seems unreasonably severe.

"The peace and dignity of the people of the state of California are not considered when her officers employ the power placed in their hands to satisfy a private grudge of an individual or a neighborhood, however well founded that grudge might be.

"It will be necessary for this court to affirm the judgment, with the hope, nevertheless, that the judge of the court below may see fit to modify the same until the demands of justice shall be simply fully met, and not leave it so that the malice or revenge of any individual or community shall be satisfied."

The petition further alleges that the statement on appeal in said action to the superior court, which statement, it is averred, sets forth, in narrative form, the testimony given at the trial of said cause, "wholly fails to show that there was any testimony given at said trial tending to establish any of the material facts necessary to a conviction of the defendant as hereinafter set forth," following which allegation is a specific statement of the particulars wherein the evidence is insufficient to justify the conviction.

The sole question which is presented or may be considered in a proceeding upon a writ of prohibition is one of jurisdiction. In the language of our code (Code Civ. Proc., sec. 1102), the office of the writ is to arrest "the proceedings of any tribunal, corporation, board or person, whether exercising functions judicial or ministerial, when such proceedings are without, or in excess of the jurisdiction of such tribunal, corporation, board or person."

The general rule is and has always been, so far as we know to the contrary, that neither this nor any other writ whose sole object is to try the question of jurisdiction can be made to subserve the purposes of a writ of error or be extended in its corrective scope to the review of errors of law committed by any "tribunal, corporation, board or person," in a proceeding of which such tribunal, etc., has jurisdiction under the law. This rule has been, generally speaking, strictly adhered to at least in California. In the very recent case of

the *Western Union Tel. Co. v. Superior Court etc.*, 15 Cal.
App. 679, 701, [115 Pac. 1100], decided by this court, the
question was, upon prohibition, whether the Postal Telegraph
Company, a foreign corporation, was authorized by the law
of this state to exercise the power of eminent domain. The
contention of the petitioner in that case was that no such
right was conferred upon foreign telegraph corporations, and
that, therefore, no complaint could by any possibility be filed
in the trial court which could give that tribunal jurisdiction
to try a case for the condemnation of property by such a
corporation. This court conceived that point to be well
made, and so heard the proceeding, holding ultimately, how-
ever, that foreign telegraph corporations were, under certain
conditions, prescribed by the federal government, authorized
to exercise the power of eminent domain in California. But
the supreme court denied a petition for a hearing of the cause
by that court after the decision of this court on the sole
ground that, notwithstanding "that the capacity of a foreign
corporation to exercise the power of eminent domain in this
state is purely a question of law, it is (nevertheless) a ques-
tion as much within the jurisdiction of the superior court as
other questions of law arising in similar cases which are held
to be reviewable here only on appeal."

Manifestly, therefore, we must be prepared to say that the
record before us shows that the respondents are without juris-
diction to render any judgment on the appeal before we
would be authorized to make or grant an order restraining
them from doing so. We find no warrant for so declaring.

But counsel for the petitioner here strenuously insist that,
in proceedings on prohibition, jurisdiction is not the only
question which may be considered and determined, but that
this court has the power, through the employment of that
writ, to prevent the exercise, by an inferior tribunal, etc., of
any judicial act contrary to law, and a number of California
cases as well as some from other jurisdictions are cited as
supporting that position, the theory upon which the argument
proceeds being that the higher courts, by appropriate original
proceedings which may be instituted therein, are thus given
the power to exercise the power of general supervision over
and control of the proceedings in the subordinate courts
where there is no remedy in the ordinary course of law for

the correction of. errors committed in such proceedings. In other words, in substantial effect, the argument is that where an inferior tribunal threatens to do an act which is contrary to law, such act may be prevented by the courts of last resort through the writ of prohibition, without regard to whether the act so threatened affects or concerns the jurisdiction of the court to do the threatened act or not. It is, therefore, contended that, in this proceeding, we are at liberty to review the evidence adduced in the justice's court as the same is narrated in the petition here for the purpose of determining its evidentiary value and review and pass upon any and all the alleged errors committed by the justice's court in the trial of the cause.

It is very clear that we cannot accept the theory thus advanced without extending the writ of prohibition far beyond any purpose it is designed to subserve.

In the first place, it is to be remarked that the question whether the evidence upon which the jury in the justice's court convicted the petitioner is sufficient to justify the verdict is one which, obviously, cannot be reviewed in a proceeding of this· character. That question was one entirely for the jury in the first instance, and if the charge be true that the evidence does not support the finding of the jury, then the sole remedy for the correction of the error thus committed lies in an appeal to the superior court. (Pen. Code, sec. 1466.) In other words, it is within the jurisdiction of the jury to return a verdict of guilty whether the evidence warrants it or not, and equally is it within the jurisdiction of the superior court, on an appeal thereto from a judgment rendered in a criminal action cognizable by the justice's court, to decide whether there exists or does not exist any ground— whether arising upon the evidence or the rulings or the instructions, if any be given—for affirmance, reversal or modification of such judgment, nor can said court be prevented from exercising such jurisdiction or, in the exercise thereof, be required to decide the appeal in a particular way.

A distinction must be recognized between those cases, of which *Bruner* v. *Superior Court,* 92 Cal. 239, [28 Pac. 341], and *In re Shortridge,* 99 Cal. 526, [37 Am. St. Rep. 78, 34 Pac. 227, 21 L. R. A., N. S., 755], are exemplars, wherein the question of jurisdiction rests so essentially upon extrinsic

facts that a review thereof is not only necessary, but proper, in order to determine that question, and those cases wherein the determination of the question of jurisdiction rests entirely on the power vested by the legislature in the courts to perform certain definitely specified acts.

In the Bruner case the question of the court's jurisdiction to try the petitioner on a certain felony charge arose upon the question of the validity of the indictment upon which it was proposed to put him upon his trial, the validity of said indictment having been challenged on the ground that an *elisor* had been appointed to summons the grand jury by which the indictment was found and returned, it affirmatively appearing that the sheriff was in no way disqualified from summoning said jury. The question in that case was whether the court had jurisdiction to appoint an *elisor* for that purpose in the absence of an affirmative showing that the sheriff was disqualified, and, of course, it was necessary, in order to determine that question, for the court, on prohibition, to ascertain the fact whether the sheriff was or was not so disqualified.

In the Shortridge case the petitioner had been adjudged guilty of contempt of court for the violation of an order of said court made in a divorce case, interdicting the publication of the testimony heard in said case. The petitioner, publisher of a daily newspaper at the county seat of the county in which the court proceedings were had, published a report of the testimony in violation of said order.

There was no question in either of those cases, nor could there be, but that the court had jurisdiction to appoint an *elisor* and to punish for contempt, in proper cases. The question in both cases was not, therefore, whether, abstractly speaking, the subordinate courts had jurisdiction to do those things, but whether the *facts* therein disclosed were such as to authorize or justify those courts in exercising that jurisdiction. The real question, in other words, was whether the courts below had abused their discretion in the exercise of the general power or jurisdiction with which they are invested, or, to state the proposition in another way, whether those courts acted upon *facts* which could not put their jurisdiction as to such matters in motion. Thus it is to be perceived that the question of jurisdiction in those cases rested

essentially upon extrinsic facts, and necessarily the courts issuing the writs therein were required to review and examine those facts for the purpose of determining whether the courts below had acted within or beyond their jurisdiction.

But, in the case at bar, no question can arise either as to the jurisdiction of the justice's court to try the misdemeanor of which the petitioner has been convicted, or the appellate jurisdiction of the respondent, superior court, of the class of misdemeanors to which it belongs. Jurisdiction in both instances is definitely prescribed and fixed by the law itself, and, therefore, obviously, no proof of facts extrinsic to the law is essential to warrant its exercise. Hence, it is plainly to be discerned that there is a very great distinction, in their nature and purpose, between the facts which it was absolutely essential for the supreme court to review and consider in the Bruner and Shortridge cases and the facts which counsel for petitioner urge upon this court to review. In this case, the facts do not, as they could not, affect the question of jurisdiction, but entirely bear upon and relate to the merits of the case—that is, whether they are or are not sufficient to support the verdict rendered against petitioner in the justice's court. As stated in the beginning, that question is one that cannot be reviewed in a proceeding of this character, even if it were conceded that the evidence is insufficient to justify the verdict, without torturing the office of this writ.

We are now brought to a consideration of the only point to which we attached any importance upon the granting of the order for the alternative writ, viz.: That the complaint upon which petitioner was convicted does not state facts sufficient to constitute an offense under the terms of the section of the Penal Code upon which that pleading was drafted. The contention is that, if the complaint does not state a public offense, the judgment of imprisonment is void, and that, therefore, the respondents are without jurisdiction to make any order whatsoever on the appeal.

It has been held that a complaint which purports to charge a misdemeanor of which justices' courts have jurisdiction but which fails to state any offense known to the law may, upon the conviction of the accused under the averments of such pretended pleading, be declared void on *habeas corpus* and the accused discharged from custody. (*Ex parte Greenall,*

153 Cal. 767, [96 Pac. 804].) Since unlawful restraint of one's liberty, from which restraint he may be released through the writ of *habeas corpus,* involves, essentially, the question of jurisdiction, it follows, of course, that where, as here, the relief sought is to prevent the performance of an act which, it is alleged, would be in excess of the jurisdiction of the court, or where, as in the Shortridge case, *supra,* such act has already been performed, the writ of prohibition, in the first-mentioned case, and the writ of *certiorari,* in the last-mentioned case, may be invoked to prevent the doing of or to annul, as the case may be, the act, the validity of which is thus challenged.

But we think the complaint, with sufficient clearness, states the offense sought to be thereby charged.

The specific claim of the petitioner is, however, that the complaint does not set forth all the facts essential to a proper description of the crime as it is defined by section 604 of the Penal Code. That section, it will be remembered, provides that every person who maliciously injures or destroys any standing crops, grain, cultivated fruits or vegetables, etc., *"in any case for which a punishment is not otherwise prescribed by this code,* is guilty of a misdemeanor."

The argument is that the complaint, to have stated the offense defined by that section, should have alleged and thus have shown that the act charged against the petitioner by the complaint is one "for which a punishment is not otherwise provided" by the Penal Code.

To sustain this contention, counsel refer us to the case of the *People* v. *Grinnell,* 9 Cal. App. 238, [98 Pac. 681], wherein an indictment, purporting to charge the defendant with the crime denounced by section 288 of the Penal Code, was held fatally defective in that it did not, by appropriate or any averments, negative the exception prescribed in said section. Said section provides that "any person who shall willfully and lewdly commit any lewd or lascivious act *other than the acts constituting other crimes provided for in part two of this code* upon or with the body, or any part or member thereof, of a child under the age of fourteen years, with the intent," etc. The indictment merely alleged that the defendant "did willfully and lewdly commit a lewd and las-

civious act upon and with the body of a child under the age of fourteen years . . . with the intent," etc.

It will thus be noticed that the indictment contained no allegation which disclosed that the act charged against the accused was not one of those acts "constituting other crimes provided for" in another designated part of the Penal Code, and as the language referring to the acts "constituting other crimes" was, essentially, partly descriptive of the crime attempted to be charged, the failure to state in the indictment that the act of the defendant did not come within those acts constituting "other crimes" resulted in a failure to properly describe the crime thus sought to be preferred against the accused, and, therefore, a failure to state a public offense.

The rule in such cases is that where a statute expressly exempts from its operation the commission of certain other acts than those mentioned therein for which a punishment is otherwise or by some other enactment prescribed, and such exception "is so incorporated with and becomes a part of such statute as to constitute it a part of the definition of the crime," then the exception must be pleaded in order to properly describe and state the offense. (*Ex parte Hornef,* 154 Cal. 360, [97 Pac. 891]; *People* v. *Grinnell,* 9 Cal. App. 238, [98 Pac. 681], and cases therein cited.)

But it is plainly manifest that the "exception" with which section 604 of the Penal Code concerns itself constitutes no essential part of the description of the crime therein defined. There is nothing in the language of said "exception" or in the substance thereof which can add anything to the language precedently used in describing the act which must be committed to constitute the crime or in describing the intent which must accompany such act to consummate it. In other words, said language or the proposition it expresses is descriptive in no sense or degree either of the act or the condition of mind which must be present in the commission thereof. Nor does it describe any act or acts constituting a crime under other enactments which, if perpetrated by the accused, would, as in the case of section 288, have the effect of removing his conduct as charged in the complaint from within the purview of said section. The "exception" merely deals with the matter of the punishment for the crime described by said section. It simply means, in other words, that one who may

be convicted of the offense of maliciously injuring or destroying any standing crops, etc., shall, in case there is no other or different punishment specifically prescribed for such act by some other section or sections of the Penal Code, be punished as for a misdemeanor by the infliction of the penalty prescribed by section 19 of said code. And the courts will take judicial notice of the fact that the only other section of the code, apart from subdivision 3 of section 602, which we shall later examine, which provides another and different punishment for an offense bearing any resemblance to that described by section 604, viz., section 600, provides that the destruction, etc., must be by means of "burning," an element without the averment of which the crime denounced by that section would not be stated or bring the act of destroying the "standing grain or grass" within the terms and penalty of said section, whereas, in a case under section 604, the injury or destruction may be by any other means than by burning. If the complaint should allege that the growing grain or grass, both of which are included within the word "crops," had been destroyed by means of burning, readily it would appear that the act charged was a felony under section 600 of the code and not the misdemeanor defined by section 604 thereof.

It is contended, however, that the "standing crop of grain" alleged in the complaint to have been injured and destroyed by petitioner could have been injured and destroyed by the commission of a trespass under subdivision 3 of section 602 of the Penal Code, and it is, therefore, insisted that the acts set forth in said complaint constitute a case in which a punishment is otherwise prescribed by said code; hence, in order to have stated an offense under section 604, the complaint should have contained averments disclosing that the acts of which the petitioner was thereby accused were not the acts referred to in said subdivision of section 602.

Said section and subdivision provide: "Every person who willfully commits any trespass by either: . . . 3. Maliciously injuring or severing from the freehold of another anything attached thereto, or the produce thereof, . . . is guilty of a misdemeanor."

The foregoing provision is manifestly broader in its scope than section 604 and it may be conceded may include within its purview the act which, maliciously perpetrated, consti-

tutes the crime denounced by the last-mentioned section. But it appears to be very clear that the paramount purpose of subdivision 3 of section 602 is to prescribe a penalty for any *trespass* by which the *freehold* of another is maliciously injured in any of the ways expressly pointed out by said section and subdivision thereof or by any act fairly and reasonably within the contemplation of the language thereof, while the purpose of section 604 is to punish the act of injuring or destroying, not the freehold itself, but the crops, grain, etc., growing thereon. Subdivision 3 of section 602, in other words, clearly comprehends any character of injury to the *freehold.* For illustration, a malicious injury to a house or other structure attached to the freehold, which would constitute an injury to the freehold itself, or the severing or removal, maliciously, of the earth or soil itself, would be punishable under the terms of said section. In order, then, to bring the act of injuring or destroying "standing crops, grain, cultivated fruits or vegetables," as defined by section 604, within the terms of said subdivision of section 602, it would be necessary to show, by direct averment, that such act was a trespass by which a thing attached to the freehold or "the produce thereof" was maliciously injured or severed therefrom. It is, therefore, very plain that there is, as between section 604 and subdivision 3 of section 602 of the Penal Code, so marked a distinction, both in the respective purposes of said sections and the language by which the crimes respectively denounced thereby are defined, that the statement of the one in a complaint in the language of the statute (and in either case the language of the section could be substantially followed in the statement of the crime therein defined) would as readily disclose the section upon which the complaint was founded as would the proper statement of the crime of manslaughter in an information or indictment disclose that murder was not charged. For illustration, if it were intended to charge the act of injuring or destroying standing grain as a trespass under subdivision 3 of section 602, the charging part of the complaint, following the language of that enactment, would read something like the following: "That........did then and there willfully and unlawfully commit a trespass upon the freehold of John Doe, as follows, to wit: by then and there maliciously severing

from the said freehold of said John Doe certain standing grain, to wit: wheat, then and there standing and growing on and attached to the said freehold of said John Doe, said wheat so standing and growing being then and there the produce thereof.'' On the other hand, the language of a complaint drawn under section 604, following the language of that section, would not specifically charge a trespass. Indeed, it would be improper to do so, since the crime therein defined is not so designated, but it would be sufficient to merely allege, as the complaint here alleges, that the accused had maliciously injured or destroyed certain standing crops of grain, etc. Thus, it being clear that the crimes under the two sections are materially different, it is manifest that the averments of the complaints under said sections, to properly state the offenses therein defined, must necessarily be different in material particulars, and, therefore, a judgment of conviction under either section could be pleaded and sustained without the aid of evidence *dehors* the complaints in any action prosecuted for the same act under the other section. It may, moreover, be stated that the effect of the judgment in either case, so far as the punishment is concerned, would be precisely the same, since the penalty prescribed by both sections is as for a misdemeanor.

We have now considered all the points which we deem essential to notice in the determination of the only question which is involved in a proceeding of the nature of the one presented here, with the result, as is manifest, that we have discovered no ground upon which we would be authorized to interfere with or obstruct the exercise by respondents of a jurisdiction with which the law invests them; but it is not conceived to be improper, under the remarkable circumstances of this case as they are disclosed by the petition, to make some observations which are neither pertinent to the issue presented here nor, consequently, necessary to a decision thereof.

In his written opinion, an excerpt from which is given herein, the learned judge is constrained, from his examination of the record on appeal to the court over which he presides, to denounce the verdict as the result, not of a fair and just consideration of the evidence by the jury, but of a ''private grudge'' against the petitioner ''of an individual or a neighborhood''; that the prosecution would never have been

instituted "if the defendant had granted her [the prosecuting witness'] demand for the written agreement to furnish her lands with water"; that had such agreement been made by petitioner, "she would probably have accepted, most gladly, the defendant's offer to pay liberally for all damages done to the land and crop in making his repairs"; that there was an absence of express malice in the act charged against the petitioner, and that, therefore, the sentence by which the petitioner must, if he can secure no relief from the consequences thereof, be imprisoned in the county jail for the period of six months, "is unreasonably severe." In short, the irresistible implication from the judge's opinion is that the petitioner was treated outrageously in his trial before the justice's court, and that his trial, conviction and the sentence thereupon imposed would constitute a more appropriate chapter in the history of the judicial infamies of Lord Chief Justice Jeffries than the record of a trial of a criminal action in an American court. Yet, in the face of all this, the judge has announced that no reason appears from the record on appeal which would justify any other course by the superior court than the making of an order affirming the judgment— a judgment which, according to his view, is "unreasonably severe," and which, if his criticism of the proceedings leading thereto be justified, cannot be the crystallization of that fair and impartial trial to which, under our system, the meanest individual is entitled, but the offspring of malice and revenge.

It is, indeed, difficult to reconcile the opinion of the judge with the action which he declares his court feels constrained to take in the disposition of the appeal. If the verdict of the jury or the sentence imposed upon petitioner, or both, were brought about in the manner as indicated in his written opinion (and we may assume that his criticisms of the trial of petitioner are justified by his examination of the statement or record on appeal), then it is unquestionably the plain duty of the court—a duty, however, the exercise of which is discretionary in the respondent court, and which, therefore, this court has no power to control—to grant the petitioner a new trial. And, while there is no necessity here for passing upon the scope of the power intended to be conferred by section 1260 of the Penal Code, so far as such power may be affected by the word "modify" as used in said section, there need be

no reluctance in declaring that if, in truth, the legislature intended to clothe the court to which said section is applicable with the right to modify judgments in criminal cases in the sense that the sentence or punishment in such cases may be changed, such power was clearly intended to be exercisable solely by the appeal courts—in this instance by the superior court and not, as the judge seems to suppose, by the justice's court before which the case was tried and which, obviously, lost jurisdiction or all power over the case upon an appeal being taken from its judgment.

We have thus expressed our convictions as to the duty of the respondents in this case because we have been greatly impressed with the startling views expressed by the judge with regard to the character of the trial accorded the petitioner by the justice's court, and, furthermore, because, if said trial was such as it is declared to have been by the judge of the superior court, an appeal to which is the only remedy afforded a citizen convicted of a crime triable in justices' courts, it would be a blot upon the judicial annals of this state or of any other civilized community where such a trial might take place, to permit its result to remain undisturbed, when there is vested in the appellate court ample power to set it aside and so give the petitioner an opportunity to be tried according to due process of law.

It must be understood, we may repeat, that the foregoing suggestions are ventured upon the assumption that the judge's characterization of the trial and sentence of the petitioner is justified by the record on appeal, which, in this proceeding, we are not at liberty to review, except in so far as it or any portion thereof might affect the question of the jurisdiction of respondents.

In accordance with the views herein expressed, the demurrer to the petition will be, and it is hereby, sustained, and the alternative writ of prohibition discharged.

Burnett, J., and Chipman, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 27, 1911.