Argued October 14, 1930; reversed January 27; rehearing denied
February 24, 1931

# WEDDLE ET AL. *v.* PARRISH
### (295 P. 454)

*W. C. Winslow*, of Salem, for appellant.
*John Bayne*, of Salem, for respondent.

BEAN, C. J.  On the 26th of October, 1926, the then owners of the land in controversy executed a lease of the premises to Jesse Parrish for a period of three years, from the first day of September, 1926, expiring on the first day of September, 1929.  The premises are described as farm land, known as the Ellen Vaughn Donation Land Claim, containing about two hundred acres.  The rent reserved was $300 per year, to be paid in payments of $150 each, on the first day of March and on the first day of September of each year, so long

as the lease was in force. The lease was made for the purpose of pasturing sheep. It contained the following covenant:

"The said Jesse Parrish (defendant) does hereby agree * * * that should the above-described land be sold or transferred, he (Jesse Parrish) agrees that this lease becomes null and void. The parties of the first part (plaintiffs' predecessors) agree that should they sell or transfer this land that they will give Jesse Parrish sufficient time to remove his crops."

It is the position of plaintiffs that on the first day of August, 1928, they sold the premises and requested defendant lessee to surrender possession of the farm. After showing this plaintiffs rested their case and defendant moved for an involuntary judgment of nonsuit against plaintiffs.

The question presented by this motion involves the construction of the lease containing the provision above quoted. It is contended by plaintiffs that a sale of the premises rendered the lease null and void. The contention of defendant is that such sale does not render the lease null and void, but that, construing the whole provision of the lease, it would be terminated upon such sale, plus reasonable time to remove the crops, and that since both parties admit that it was leased for pasture purposes, it being a farm lease, and that since the lease does not itself attempt to fix what would be a reasonable time, the statute fixes that as ninety days, and that as such notice was not given, plaintiffs' action can not be maintained.

Oregon Code 1930, § 5-211 (Or. L., § 2532), provides:

"The following shall be deemed causes of unlawful holding by force within the meaning of this chapter: * * * 2. When the lease by its terms has expired, and has not been renewed, or when the tenant or person in possession is holding from month to month, or

year to year, and remains in possession after notice to quit, as in this act provided or is holding contrary to any condition or covenant of such lease, or is holding without any written lease or agreement therefor.''

It is not claimed by plaintiffs that the holding of the premises in question is based on actual force. See *Smith v. Reeder*, 21 Or. 555 (28 P. 890, 15 L. R. A. 172).

As to notice see Oregon Code 1930, § 5-222 (Or. L., § 2543), Oregon Code 1930, § 5-223 (Or. L., § 2544), provides:

''An action for the recovery of the possession of the premises may be maintained in cases provided in subdivision 2 of section 9 (5-211) of this act, when the notice to terminate said tenancy or to quit has been served upon the tenant or person in possession, for the period or periods, as in this chapter provided, before the commencement thereof, unless the leasing or occupation is for the purpose of farming or agriculture, in which case such notice must be served for a period of ninety days before the commencement of an action.''

■ The occupation of land for the purpose of farming or agriculture is for a very general purpose and we think it should be assumed that the pasturing of sheep is embraced within the term ''farming or agriculture.''

Defendant assigns error of the court in refusing to grant defendant's motion for nonsuit. The first and main question for determination is whether the lease, by its terms, had expired at the time of the commencement of this action. No notice to quit was served on defendant. Oregon Code 1930, § 5-225 (Or. L., § 2546), provides that when the leasing or occupation is for the purpose of

''farming or agriculture, the tenant, or person in possession shall, after the termination of such lease or occupancy, have free access to the premises to cultivate

and harvest, or gather any crop or produce of the soil planted or sown by him before the service of notice to quit."

■ The provision of the latter section applies to crops planted or sown by the occupant and does not apply to crops, such as are in question in this case, only so far as to show the intent, to a certain extent, of the lawmakers.

■ It is safe to say that the general rule is that where the contract or lease so provides, the lease is terminated by the sale of the premises by the landlord. In order for a sale to terminate a lease, it must be strictly within the conditions provided for by the lease itself, and if there is any doubt as to the meaning and effect of these conditions the lease is to be construed most strongly against the lessor. The intention of the parties as expressed in the lease must control: 35 C. J., § 216, p. 1054.

The management of livestock, such as depasturing and feeding sheep, is embraced within the term "agriculture" or "farming." Webster's New International Dictionary; 2 C. J., § 1, p. 988.

■■ In the discussion of this question it is apparent that the plaintiffs construe the lease in sections. We take that instrument by the four corners and endeavor to determine what was intended by the language therein. The lessors agreed that should they sell or transfer this land they would give the lessee, Jesse Parrish, sufficient time to remove his crops. It is shown that the crops on the land consisted of growing grass and a few tons of apples and pears. The acknowledgment of one of the grantors in the deed was taken on October 22, 1928. The deed was delivered after that time and duly recorded on October 30, 1928. This action was commenced on October 25, 1928. The defendants

had no opportunity to obtain any benefit of their lease for the season for which the rent had been paid. The defendant, who had about fourteen hundred head of sheep, desired, as it often occurs, to pasture them upon the land in question during the fall season. Therefore, if the lease was terminated immediately upon a sale of the premises, he would lose all the perennial crops, grass and fruit then growing upon the land. We do not think such was the intention of the parties, as evidenced by the contract, which, apparently, they prepared themselves. No precise or technical language is necessary for the purpose of creating a covenant. Whenever the intention of the parties can be gathered from the instrument, amounting to an agreement to do, or not to do, a particular thing, it is sufficient to create a contract: 1 Taylor's Landlord and Tenant (9th Ed.), § 246.

The word "crop" in its more general signification is said to mean all products of the soil that are grown and raised and gathered annually during a single season. In this sense the term includes both fructus industriales, or annual crops, and fructus naturales, or natural crops. In some instances classification depends on the intention of the parties and on the nature of the transaction involved. It is held in California that at the present day the word "crop" taken in its most comprehensive sense includes fruits grown on trees, while the trees themselves are not so included in that term: *Cottle v. Spitzer*, 65 Cal. 456, 457 (4 P. 435, 52 Am. Rep. 305); 17 C. J. 379, § 1 and note (f). The case of *Hogan v. Merced County Superior Court*, 16 Cal. App. 783 (117 P. 947), involves the violation of the statute providing against the malicious injury or destruction of "any standing crops, grain, etc." It was held in that case that both grain and grass are included

within the word "crops." See 17 C. J. 379, note (c). The word "crop" usually does not apply to grass growing on depastured lands: *Moore v. Hope Natural Gas Co.*, 76 W. Va. 649, 656 (86 S. E. 564).

■ It is not so much the strict definition of the word "crop" as it is what the parties intended by the language they used in the lease or contract. In the present case, evidently the grass which was intended to be depastured and the fruit which grew on the trees, which the sheep were allowed to eat, were the only crops that the parties had in mind. Apparently there was nothing else upon the land for the covenant to refer to and unless the agreement in the lease referred to crops of grass and fruit, it did not refer to, or mean anything. The original lessor construed the covenant when he sold the land to the Weddles, as shown by the contract of sale to plaintiffs, which reads in part as follows:

"It is understood and agreed by and between the parties hereto that the premises above described are now under lease and that the terms thereof provide that in case of sale of said premises, the lessee shall deliver up the possession thereof upon three months' notice of such sale, and the parties of the first part undertake to cause the said lessee to vacate said premises within said period of time."

If the lease had then expired the defendant would have been entitled to ninety days' notice to quit. We are of the opinion that ninety days is the shortest time that could reasonably be given the defendant in which to remove his crops. The real point is that when the land was sold and conveyed to plaintiffs, the defendant Jesse Parrish had not had sufficient time to obtain the benefit of the crops thereon, for which he had paid all the rent that was due. The lease, by its terms, had not terminated, and the plaintiffs could not at that

time maintain the action of forcible entry and detainer. The fact that one hundred thirty or one hundred forty bushels of fruit growing upon the land were not to be marketed or were not of a quality to be marketed, would not change the situation. The defendant had a right to this crop and whether he used it in feeding his sheep so as to make a profit or to lose was a chance that he took and did not concern the plaintiffs.

The plaintiffs contended that the agreement or provision for the time to remove the crops would not affect the termination of the lease and that it would expire upon the sale or transfer of the premises, and they cite *Hostetler v. Eccles,* 98 Or. 355 (194 P. 166 and 112 Or. 572, 580, 230 P. 549). The gist of the holding in that case was that where a farm lease provided for the termination of the lease on lessor's sale of the property prior to the expiration of the specified term, the lessee, having planted a crop, had the right under Oregon Code 1930, § 5-225 (Or. L., § 2546), to enter upon the land and gather the crop, since in such case the termination of the lease depended on an uncertain event. The case differs from the one in hand, but in principle it supports the holding which we have made. Although the grass might be termed a part of the realty, the same as trees, there was nothing to prevent the lessor and lessee from covenanting and agreeing that the lessee, the defendant, should be entitled to have the same. The plaintiffs, as shown by the contract to purchase the land, had notice of and purchased the same subject to the lease of defendant.

The motion of defendant for a nonsuit should have been granted.

The judgment of the circuit court must therefore be reversed. It is so ordered.

Brown and Belt, JJ., concur.