JOHN SARDIS, PETITIONER, *v.* THE SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF WASHOE, DEPT. NO. 1, AND THE HONORABLE GRANT L. BOWEN, JUDGE THEREOF, RESPONDENTS.

No. 5952

October 29, 1969                    460 P.2d 163

*Woodburn, Forman, Wedge, Blakey, Folsom and Hug,* of Reno, for Petitioner.

*Harvey Dickerson,* Attorney General; and *William J. Raggio,* District Attorney, *Kathleen M. Wall,* Deputy District Attorney, and *Jack I. McAuliffe,* Special Deputy District Attorney, Washoe County, for Respondents.

**OPINION**

By the Court, MOWBRAY, J.:

Petitioner John Sardis seeks a writ of prohibition enjoining

the Second Judicial District Court from proceeding in an action pending in that court in which Sardis is charged in a criminal complaint with "PRACTICING ARCHITECTURE IN THE STATE OF NEVADA WITHOUT A CERTIFICATE, A VIOLATION OF NRS 623.180."

Sardis was convicted in justice's court on December 2, 1965. He appealed to the district court for a trial *de novo,* where he moved for a dismissal of the complaint on the grounds that the district court was without jurisdiction to proceed because (1) the complaint failed to allege facts constituting a public offense and (2) Sardis as a structural engineer was exempt as a matter of law from the provisions of NRS 623.180. The court denied the motion, and Sardis has petitioned this court for a writ of prohibition. We hold that the writ should issue.

## I. APPROPRIATE REMEDY

Prohibition is a proper remedy in this case. Article 6, section 6, of the Nevada Constitution confers upon our district courts final appellate jurisdiction in all issues appealed from justice's courts. Ordinarily, Sardis's final recourse would rest with the district court. When, however, valid jurisdictional objections are raised and are denied by the district court, a resulting trial in the district court would be futile. As the court said in Farraher v. Superior Court, 187 P. 72, 73 (Cal.App. 1919), in commenting on a writ of prohibition as an appropriate remedy in a case procedurally similar to the instant case:

"Notwithstanding the insufficiency of the complaint, prohibition would not lie against the justice court proceeding with the trial of the defendant thereon, for the reason that, if convicted, he would have a plain, speedy, and adequate remedy by appeal to the superior court. . . . [N]evertheless, as was his right, he availed himself of the remedy by appeal, and, on perfecting the same, made his motion to dismiss the action for want of a sufficient complaint. Since, as we have seen, no facts constituting a criminal offense were stated therein, there was nothing upon which to try the defendant, and hence the court should have granted the motion, instead of which, however, it made an order denying it, and, as shown, threatens to and will, unless restrained by an order of this court, proceed with the trial for the purpose only of determining whether or not the judgment should be modified. It therefore appears that the judgment which the court proposed to render would be a futile act. No appeal would lie therefrom, and conceding that petitioner might, upon such conviction in the superior court, avail

himself of an application for a writ of review to have the judgment annulled, or seek release from custody by habeas corpus, nevertheless no purpose could be served by subjecting petitioner to a trial, the result of which, concededly, would be a nullity. Clearly, upon the facts presented, the court should be prohibited from taking any action in the case, other than to make an order dismissing the same. Hogan v. Superior Court, 16 Cal.App. 783, 117 Pac. 947."

Nevada has granted writs of prohibition in similar situations. See Smith v. District Court, 75 Nev. 526, 347 P.2d 526 (1959), and Houser v. District Court, 75 Nev. 465, 345 P.2d 766 (1959). In both cases the petitioner sought a writ of prohibition on the ground that the Information did not charge a public offense and that, therefore, the court was without jurisdiction to try the case. And in both cases the court held that the complaints were insufficient and granted the writs. The court, in Houser, at 469, approved an earlier Nevada decision:

"In Re Waterman, 29 Nev. 288, 89 P. 291, 11 L.R.A., N.S., 424, this court held that there can be no conviction for or punishment of a crime without a formal and sufficient accusation and that in the absence thereof a court acquires no jurisdiction whatever, and if it assumes jurisdiction, the trial and conviction would be a nullity. As the amended information fails to charge the elements of the offense of grand larceny or any other felony or gross misdemeanor, the trial court is without jurisdiction to proceed with the trial of defendants upon such amended information."

## II. SUFFICIENCY OF THE COMPLAINT

At the time Sardis was charged with the violation of NRS 623.180, NRS 185.030 provided, in part:

"1.   When a complaint is laid before a justice of the peace, or a judge of any inferior tribunal having jurisdiction of criminal offenses, that an offense has been committed, of which a justice's court or other inferior tribunal has jurisdiction, the justice or judge to whom the complaint is made shall cause the person making the complaint, or someone else, to file with him a statement in writing, sworn to before him, or some other officer authorized by law to administer oaths, *setting forth the offense charged, with such particulars as to time, place, person and property as to enable the person charged to understand the character of the offense complained of and to answer the complaint or charge.*" (Emphasis added.)

It is patently clear that the complaint fails to meet even the minimal standards of specificity required in such cases. It alleges:

"That the said defendant from October, 1964 until May, 1965, or thereabouts, at Reno Township, in the County of Washoe, State of Nevada, did wilfully and unlawfully practice architecture without having a certificate issued to him under the provisions of Chapter 623 of the Nevada Revised Statutes."

NRS 623.040 defines the "practice of architecture" as:

". . . the holding out to the public of services embracing the scientific, aesthetic, and orderly coordination of all the processes which enter into the production of a completed building, performed through the medium of unbiased plans, specifications, supervision of construction, preliminary studies, consultations, evaluations, investigations, contract documents, and oral advice and direction."

The complaint as drawn merely charges the petitioner with a violation of the statute, and nothing more. This is manifestly not sufficient. As Chief Justice McCarran wrote in Ex parte Rovnianek, 41 Nev. 141, 149, 168 P. 327, 329 (1917), in quoting Chief Justice Waite in United States v. Cruikshank, 92 U.S. 542, 558 (1875):

" 'It is an elementary principle of criminal pleading that where the definition of an offense, whether it be at common law or by statute, "includes generic terms, it is not sufficient that the indictment shall charge the offense in the same generic terms as in the definition, but it must state the species; it must descend to particulars. " ' "

The complaint in the instant case simply fails to state any facts which might be construed as constituting a violation of the provisions of chapter 625 of Nevada Revised Statutes, and the motion to dismiss should have been granted for this reason alone. See NRS 189.070[1] and NRS 174.105, subsection 3.[2]

---

[1]NRS 189.070:

The complaint, on motion of defendant, may be dismissed upon the following grounds:

1. That the justice did not have jurisdiction of the offense.
2. That more than one offense is charged therein.
3. That the facts stated do not constitute a public offense.

[2]NRS 174.105, subsection 3:

Lack of jurisdiction or the failure of the indictment, information or complaint to charge an offense shall be noticed by the court at any time during the pendency of the proceeding.

### III. PETITIONER'S EXEMPTION FROM THE PROVISIONS OF THE ARCHITECTS ACT, CHAPTER 623, NEVADA REVISED STATUTES

While we appreciate that our holding, just announced, is dispositive of the present case, in order to set the matter at rest we turn to consider petitioner's second contention: that as a professional structural engineer he is exempt from the provisions of the Architects Act. We hold that he is so exempt.

NRS 623.180 provides, in part:

"1. No person shall practice architecture in the State of Nevada without having a certificate issued to him under the provisions of this chapter."

The definition of "practice of architecture" is contained in NRS 623.040, as follows:

"The practice of architecture is defined as the holding out to the public of services embracing the scientific, aesthetic, and orderly coordination of all the processes which enter into the production of a completed building, performed through the medium of unbiased plans, specifications, supervision of construction, preliminary studies, consultations, evaluations, investigations, contract documents, and oral advice and direction."

NRS 623.360 provided, in part, at the time of Sardis's conviction:

"1. Any person violating the provisions of this chapter [being the chapter pertaining to architects] shall be guilty of a misdemeanor, and upon conviction thereof shall be sentenced for the first offense to pay a fine of not less than $50 nor more than $200; and for a second or subsequent offense shall be sentenced to pay a fine of not less than $200 nor more than $500."

However, certain persons are exempt from the provisions of the architectural chapter. These exemptions are contained in NRS 623.330, which provides as follows:

"The following persons are exempt from the provisions of this chapter:

"1. A person engaging in architectural work as an employee of a registered architect, provided that the work does not include responsible charge of design or supervision, or a consultant retained by a registered architect.

"2. A person practicing architecture as an officer or employee of the United States.

"3. *A professional engineer registered under the provisions of chapter 625 of NRS who designs buildings as permitted by chapter 625 of NRS.*

"4. A person who designs buildings and supervises the construction thereof for his own use.

"5. A contractor licensed under the provisions of chapter 624 of NRS who provides his own drawings for his own construction activities.

"6. A draftsman who does not hold himself out to the public as an architect." (Emphasis added.)

The crime, as set forth in NRS 623.360, is the violation of any of the provisions of chapter 623. Petitioner may not be charged with the violation of the chapter, if the chapter provides that he is exempt.

The issue of *exemption* goes to the very jurisdiction of the court. In Ex parte Davis, 33 Nev. 309, 110 P. 1131 (1910), the Supreme Court of Nevada discharged a defendant on a writ of habeas corpus where he had been convicted in the justice's court of the misdemeanor of carrying a concealed weapon. It was the contention of the defendant that he was exempt from the act prohibiting the carrying of concealed weapons, under the terms of the act, which exempted persons "acting or engaged in the business of common carriers in this state." The court held that this issue went to the *jurisdiction* of the court. The court stated, at 312:

"The modern doctrine of jurisdiction, the excess of which *habeas corpus* may relieve against, goes not only to jurisdiction over the person and the subject-matter, but to the power or jurisdiction to render the particular judgment. . . . With this modern doctrine, which is more in accord with reason and justice, this court is already in accord. . . . [Citations omitted.]

". . . 'There are three essential elements necessary to render convictions valid. These are that the court must have jurisdiction over the subject-matter, the person of the defendant, and authority to render the particular judgment. If either of these elements is lacking, the judgment is fatally defective, and the prisoner held under such judgment may be released on *habeas corpus*. . . .'

". . . ' "The court derives its jurisdiction from the law, and its jurisdiction extends to such matters as the law declares criminal, and none other; and when it undertakes to imprison for an offense to which no criminality is attached, it acts beyond its jurisdiction." '

"No better illustration of the wisdom and justice of this view could be found than in cases like that under consideration, where a statute makes the doing of a certain act a penal offense, and then exempts a certain class of persons from its provisions. *As against the exempted class* the law has no force or effect, and the court is *without power* to impose punishment upon that exempted class for the doing of an act punishable as to others not within the exemption. . . ." (Emphasis added.)

The State concedes that Sardis during the period mentioned in the complaint was a duly licensed professional engineer under the provisions of chapter 625 of Nevada Revised Statutes and was qualified to design buildings as provided by that chapter.[3]

The State contends that the exemption statute applies to a professional structural engineer only when the services he renders require the application of "engineering principles and

---

[3]CERTIFICATE

THE UNDERSIGNED, HOWARD BLODGETT, being first duly sworn, states that he is the Secretary of the Nevada State Board of Registered Professional Engineers, and that under the provisions of Chapter 625 of N.R.S., a certificate was duly issued to *JOHN M. SARDIS* on the *24th* day of *October, 1963,* being Certificate Number *1886.* The certificate authorized the practice of professional engineering, designating qualification in the branches of civil and structural engineering. The certificate remains unrevoked and unexpired; and, pursuant to Chapter 625 of N.R.S., JOHN SARDIS has been, from the date of issuance of the certificate to the present date, qualified to design buildings in the State of Nevada.

Howard B. Blodgett

HOWARD B. BLODGETT, Secretary

NEVADA STATE BOARD OF REG-ISTERED PROFESSIONAL ENGI-NEERS

[Seal of the Board]

Subscribed and sworn to before me this *23rd* day of June, 1969.

Procter Hug, Jr.

NOTARY PUBLIC

PROCTER HUG, JR.
[Seal]   Notary Public—State of Nevada
Washoe County
My Commission Expires Feb. 27, 1970

data." See NRS 625.050.[4] We do not agree. NRS 625.050 does not *restrict* the engineer to the services set forth therein, but rather states that the practice of professional engineering *includes* those professional services as enumerated. The purpose of the statute is to define those engineering services that one who is not a registered engineer may not do.

If an ambiguity in the exemption statute does in fact exist, it must be resolved in favor of the petitioner, because he is charged with a criminal complaint. As this court said in Ex parte Davis, supra, at 318 (P. at 1135) : "Penal statutes should be so clear as to leave no room for doubt as to the intention of the legislature, and where a reasonable doubt does exist as to whether a person charged with a violation of its provisions is within the statute, that doubt must be resolved in favor of the individual."

We conclude that those engineers who are permitted to design buildings under the Engineers Act are exempt from the Architects Act.

It is hereby ordered that the writ of prohibition shall issue, and the Second Judicial District Court is hereby enjoined from proceeding in the case of The State of Nevada, Plaintiff, versus John Sardis, Defendant, initially filed June 15, 1965, in the Justice's Court of Reno Township in and for the County of Washoe, State of Nevada.

COLLINS, C. J., ZENOFF, BATJER, and THOMPSON, JJ., concur.

---

[4]NRS 625.050 provided, at the time of Sardis's conviction:

1. Within the meaning and intent of this chapter, "the practice of professional engineering" includes any professional service such as surveying, consultation, investigation, evaluation, planning and design, or responsible supervision of construction or operation in connection with any public or private utilities, structures, buildings, machines, equipment, processes, works or projects, wherein the public welfare or the safeguarding of life, health or property is concerned or involved, when such professional services require the application of engineering principles and data.

2. The practice of engineering shall not include land surveying or the work ordinarily performed by persons who operate or maintain machinery or equipment.