100   687
e104  299

# �containing Richmond.

## AUGUSTA NATIONAL BANK AND ANOTHER v. BEARD'S EX'OR AND OTHERS.

### November 20, 1902.

1. DEEDS—*Husband and Wife—Deed to Secure Wife—Second Deed—General Warranty by Husband and Wife—Effect on First Deed.*—If husband and wife unite in a deed conveying the husband's lands to a trustee in trust to secure the payment of a debt in which the wife has an interest, and subsequently they unite in a second deed, containing a covenant of general warranty, conveying the same land to another trustee to secure other debts of the husband, the second deed does not operate to postpone or release the wife's interest in the debt secured by first deed, nor otherwise affect her than as a release of her contingent right of dower in the equity of redemption in the lands conveyed by the second deed. In the absence of reference in the second deed to any separate estate owned by the wife, she is not bound, personally, nor is her separate estate, if any she has, bound, either under sec. 2502 of the Code, or 2295, as amended, or under act of March 7, 1900 (Acts 1899-1900, p. 1240), or in any other way by the covenant of warranty contained in the second deed. The warranty is a nullity as to the wife, and cannot operate to estop her from asserting her debt secured in the first deed.

2. DEED OF TRUST CREDITORS—*Interest in Property Conveyed.*—A creditor whose debt is secured by deed of trust on real estate has no such interest in the land conveyed as amounts to a right of property therein, or as would be bound by judgment against the creditor.

3. DEEDS—*Covenant by Married Woman—Code, Sec. 2502—Acts 1899-1900.*— The act of March 7, 1900 (Acts 1899-1900, p. 1240), relating to the property rights and liabilities of married women, was not intended to apply to a warranty in a deed in which the wife united for the purpose only of relinquishing her inchoate right of dower in her husband's property, nor 'does it repeal by implication section 2502 of the Code, declaring the effect of such a warranty.

4. STATUTES—*Repeal by Implication.*—Repeals of statute by implication

are not favored, and the presumption is always against the intention to repeal where express terms are not used.

Appeal from a decree of the Circuit Court of Augusta county, pronounced July 7, 1902, in a suit in chancery under the style of *Beard's Ex'or* v. *Fulcher,* to which appellants were admitted as parties by petition.

*Affirmed.*

The opinion states the case.

*Patrick & Gordon,* for the appellants.

*Quarles & Pilson,* for the appellees.

CARDWELL, J., delivered the opinion of the court.

The facts of this case are as follows:

E. A. Fulcher owned in his own right certain lands situated in Augusta county, and on the 28th of April, 1883, executed to George M. Cochran, Jr., trustee, a deed, in which his wife, Emma A. Fulcher, united, conveying said lands, with general warranty of title, in trust, to secure the payment of two bonds, one executed by E. A. Fulcher "to C, Beard, trustee for Emma A. Fulcher and her children under the will of Peter Engleman, deceased," for $1,487.77, bearing even date with the deed, and payable one year after date, with interest from date; and the other executed by E. A. Fulcher to Catherine J. Beard for $1,550, bearing even date with the deed, and payable one year after date, with interest from date. Under the will of Peter Engleman, deceased, Emma A. Fulcher is entitled during her life to the interest on the first-named bond, and at her death the principal belongs to her children absolutely.

After the execution of the deed to George M. Cochran, Jr., trustee, to-wit: on the 3d day of July, 1897, E. A. Fulcher and Emma A., his wife, executed another deed to John B. Cochran, trustee, conveying with general warranty the same lands, to

secure the payment of certain debts of E. A. Fulcher due the Augusta National Bank, J. B. O'Connell, and others.

The question presented is: What is the effect of Mrs. Fulcher's uniting with her husband in the second deed? Counsel for appellants contend that the effect of the union of Mrs. Fulcher in the deed of trust of 1897 is to postpone the deed of 1883 to the trust deed of 1897, so far as the accumulated interest on the bond for $1,487.77 is concerned. It is claimed that this results from (1) the operation of section 2502 of the Code, as amended, on the deed of 1897; (2) from the interpretation of the deed of 1897, as a release from Mrs. Fulcher of the accrued interest on the bond of $1,487.77; and (3) from the effect of the Married Woman's Act of March 7, 1900, on the warranty in the deed of 1897.

The first act in Virginia that prescribed how *femes covert* could "make good acknowledgments of sales of lands" was passed in 1674. Hennings Stat. 317; and, in *Nelson* v. *Harwood*, 3 Call 394, decided in May, 1803, the question was whether or not, under this statute, as amended from time to time (the amendments making no substantial changes), providing for acknowledgments of husband and wife, and the privy examination of the wife, and declaring that this mode should be as effective to convey land as if the same had been done by fine and recovery, or in any way whatsoever, the wife was bound by the covenants contained in the deed. The court held that the wife was bound by such covenants, and then followed the act of 1814 which provided "that no covenant or warranty contained in any deed hereafter by any *feme covert* shall in any manner operate upon her or her heirs further than to convey effectually from such *feme covert* and her heirs any right of dower or other interests which the said *feme covert* may be entitled to at the date of such deed."

In *Rorer's Heirs* v. *Roanoke Nat'l Bank*, 83 Va. 625, that act came under review, and the court held that it clearly ex-

empted a married woman from liability on covenants in a deed made by her and her husband. The opinion says: "By this act the effect of a married woman's deed is limited, so as to pass what estate she had at the date of the deed in the land conveyed. . . . The conveyance thus operating to pass only the estate or interest held at the date of the deed, no covenant therein contained could bind a married woman, except to the extent of making valid the conveyance as to the estate or interest actually conveyed. Therefore no estoppel could arise as to the *feme.*"

"Doubtless the provision in the act of 1814, that no covenant or warranty in any deed thereafter made by a *feme covert* should in any way operate upon her, and her heirs, except to convey effectually from such *feme* and her heirs any right of dower, or other interest in the real estate conveyed, which such *feme* may be entitled to at the date of the deed, was prompted by the decision of *Nelson* v. *Harwood, supra,* in which the wife was held bound by the covenants, and which was doubtless considered an innovation upon the spirit, if not the letter, of our legislative policy. Hence, at the first opportunity, the Legislature corrected it."

The legislation in respect to this subject, after the passage of the act of 1814, did not differ materially from the present statute, section 2502 of the Code, as amended by the act of March 6, 1890, which, so far as it has any bearing upon the question in this case, is as follows:

*"When a husband and his wife have signed a writing purporting or contracting to convey any estate, real or personal,* . . . *it shall operate to convey from the wife her right of dower in the real estate embraced therein, and pass from her and her representatives all right, title, and interest of whatever nature, which at the date of such writing she may have in any estate conveyed or embraced therein as effectually as if she were at the date an unmarried woman. Such writing shall not operate*

*any further upon the wife or her representatives by means of any covenant or warranty contained therein which is not made with reference to her separate estate as a source of credit, or which, if it related to her said right of dower, or to any estate or interest conveyed other than her own, is not made with reference to her separate estate as a source of credit."*

No other interpretation can be given to this statute than that which frees the wife from liability on the covenant or warranty contained in the conveyance as completely as did the prior statute, except when made with reference to her separate estate as a source of credit. No reference being made in a deed to her separate estate, it is, as if there were no covenant or warranty therein contained, so far as the wife is concerned.

Section 2295 of the Code, as amended by Acts of 1895-'6, provided that every contract thereafter made by a married woman which she has the power to make shall be deemed to be made with reference to her estate, which is made her separate estate by this chapter as a source of credit, and every such contract shall be deemed as intended to be made with reference to her equitable separate estate also, if any she has, as a source of credit, to the extent of her power over the same, unless the contrary intention is expressed in the contract; and in the enforcement of every such contract against her equitable separate estate a court of equity may in any case subject, to the extent of her power over the same and of her interest therein, the *corpus* of any real estate as well as the *corpus* of any personal estate settled to her separate use, but the *corpus* of such real estate shall not be subjected by a sale of the same, or any part thereof, unless it is admitted, or be made to appear, that the rents and profits of such real estate will not be sufficient to discharge the liabilities of such estate within five years; provided, that if the contract be a covenant of warranty in such writing as is mentioned in section 2502, it shall be subject to the provisions of such section.

It would clearly appear from the proviso in that statute that it was not intended to repeal, qualify, or limit that portion of section 2502 which declares that such "writing (deed) shall not operate any further upon the wife or her representatives by means of any covenant or warranty contained therein which is not made with reference to her separate estate as a source of credit," &c.

The wife, therefore, is clearly not bound by any covenant or warranty in the deed unless made with reference to her separate estate as a source of credit. The general warranty in the trust deed of 1897 was not made with reference to Mrs. Fulcher's separate estate, either expressly or constructively. The estate or interest in the land conveyed had none of the qualities or attributes of separate estate in Mrs. Fulcher. Hence, she is manifestly not bound by such warranty, and is not estopped from asserting her prior claim through her trustee, Beard, against the land conveyed in the deed of 1883.

It is argued, however, that Mrs. Fulcher made the warranty with reference to her separate estate which consisted of an interest in the real estate conveyed, measured by the accumulated interest on the bond for $1,487.77, secured by the trust deed of 1883. This contention is answered by the court in *Justice* v. *English*, 30 Gratt. 579, where it is said: "The covenant of warranty contained in it, if not wholly void, at least does not bind Mrs. Leber personally, nor does it bind her separate estate unless so intended. To construe the covenant as an undertaking binding the lots which she was then attempting to convey would be manifestly in opposition to her intention, if not absurd; and there is nothing in the nature and terms of the covenant, the subject matter, the situation of the parties, or the circumstances of the transaction, which indicates any intention on her part, or from which such intention may be fairly inferred, to charge the residue of her separate estate." This was a case in which the wife made a deed without her husband

uniting therein, and the covenant was clearly hers, and not intended for her husband.

"In enforcing the engagement of the wife against her separate estate, equity always has respect to her intention in making the engagements, and certainly never raises an implied *assumpsit* to charge the estate in opposition to her intention." *Justice* v. *English, ubi supra.*

But, it is further contended that, aside from the covenant of warranty, the effect of the union of Mrs. Fulcher in the trust deed of 1897, was to convey or release her interest in the land thereby conveyed which was conferred upon her by the deed of 1883, and which was independent of her dower.

If it had been the purpose and intention of the deed of 1897 to convey or release Mrs. Fulcher's interest conferred upon her by the deed of 1883, it is inconceivable that other and more apt phraseology should not have been employed. The deed simply conveys whatever interest the husband, E. A. Fulcher, had in the land, which was merely an equity of redemption, and Mrs. Fulcher's uniting in the deed was clearly for the purpose only of releasing or relinquishing her contingent right of dower in this equity of redemption. *Hoy* v. *Varner, ante* p. 600, and authorities there cited. The deed purported to convey no right, title, or interest of Mrs. Fulcher in the land, but her right, title, or interest in the estate which her husband had at the date of the deed, which was an equity of redemption, and as we have said, the only effect of the deed, so far as Mrs. Fulcher was concerned, was to release or relinquish her actual right, title, and interest in what he actually owned at that date—namely, her contingent right of dower in his equity of redemption conveyed by the deed. She, as a creditor under the trust deed of 1883, had no interest in the equity of redemption conveyed, because a creditor has no more or greater interest in the property encumbered than the trustee, and the trustee holding only the legal title has no interest whatever in the equity of re-

demption. A mortgage or deed of trust is a simple security for
the debt, and when considered in connection with the debt se-
cured, it is personal assets.

"A mortgage is but a mere security for the debt, and col-
lateral to it. An assignment of the debt will, in equity if not in
law, carry the mortgaged property along with it; for the debt is
the principal and the mortgage is an accessory which cannot
exists as an independent debt." 1 Lomax Dig. 440; 2 Minor's
Inst. 382, and authorities there cited.

These authorities, without doubt, establish the principle that
a mortgage is a security, and is no part of the land upon which
it rests. It is true that one who has acquired a direct interest
in land by way of lien, or by mortgage, or by deed of trust, is
often referred to by commentators and the courts as a pur-
chaser; but this does not mean that a creditor secured by a
trust deed has an interest that amounts to a right of property
in the land. A deed of trust creditor or mortgagee has no
estate in the land that a judgment would bind.

"A creditor does not lose his character as a creditor by being
secured under a deed of trust, and he is simply regarded in the
light of a purchaser within the meaning of the registry laws."
*Runkle* v. *Runkle*, 98 Va. 663.

There is nothing whatever on the face of the deed of 1897 to
indicate that Mrs. Fulcher intended to release her interest in
the debt secured to her trustee by the deed of 1883. The lands
conveyed were the property of her husband, and the debts se-
cured were his debts. We see nothing to justify the thought
that Mrs. Fulcher united in the deed to release her interest in
the debt secured in the first deed in order to render more secure
the debts of her husband when there is not the slightest intima-
tion in any part of the deed that such was her purpose. More-
over, the debt in which it is contended she released her interest is
due to her trustee, and is under his control and management,
and there is no suggestion of a consideration for her release of

her interest in the debt.   1 Jones on Mort., sec. 138; 2 Jones on Mort., sec. 1483; *Aymar* v. *Bill*, 5 Johns. Chan. Rep. 507; *Powers* v. *Lester*, 23 N. Y. 527.

The last case cited is directly in point.   There one Melvin Powers executed a mortgage to Prudence E. Powers upon his land, bearing date April 1, 1851, to secure a bond of the same date for the sum of $951.92, payable with interest.   In the year 1852, Prudence E. Powers and the mortgagor intermarried. Afterwards, in May, 1856, the mortgage of Prudence A. Powers being due but unpaid, she joined with her husband in another mortgage to one Lester on the same land and other lands to secure the husband's bonds for $60,000; and one of the questions in the case was, did the mortgage to Lester operate to discharge or release the premises from the mortgage of Prudence E. Powers, or postpone it to the one to Lester?   It was held that it did not so operate.   James, J., said: "The execution and delivery of the mortgage to Lester did not pay the mortgage to the plaintiff (Prudence E. Powers); no consideration passed to her for the act; the defendant parted with no new consideration on its receipt—but took it as security for an antecedent debt due from the husband, and hence no equity arises in behalf of the defendant (Lester) against the wife, demanding that it operate as a discharge or release of the plaintiff's prior lien.   Therefore, if the mortgage to Lester worked the release or discharge of the former mortgage, it must be upon some strict technical rule.   It had no equitable basis to support it."

"As wife she (Prudence E. Powers) had an inchoate right of dower in all the lands of which her husband was seised, the premises mortgaged to her, as well as the other lands mortgaged to Lester.   The purpose of her joinder in the Lester mortgage undoubtedly was to extinguish that right.   This is apparent from the instrument itself.   She is therein described as wife.   She acknowledged as wife.   The terms used are the ordinary ones

used in mortgages by husband and wife to bar the wife's dower. The mortgage covered many hundred acres not covered by the mortgage to her. It was without consideration on her part. It did not purport to affect her separate estate, or any lien or interest which she held in her own right, and it contained no words of release to operate upon a chose in action, or any words indicating an intent to operate upon her mortgage. Therefore, if the plaintiff's interest as mortgagee could be released by joining her husband in a subsequent mortgage, it is apparent from the instrument itself that such was not the intent or understanding of the parties at the time it was executed, but that the sole object was to bar her inchoate right of dower."

Comstock, C. J., delivering a concurring opinion in that case, referring to the second mortgage on the property in which the wife had united, and to the claim made that in so doing she had released or postponed her debt secured by the first mortgage, said: "It contained no reference to any particular interest of the plaintiff (the wife), nor any words purporting a release or covenant not to enforce her mortgage. The parties are described as Melville Powers and Prudence, his wife. What, then, is the fair construction of the instrument as against the wife? At the time of the execution she had a prior mortgage on one parcel of the land described in it, and she had an inchoate right of dower in the same parcel, and in others. If a person having a mortgage on land, but no other claim, should unite with the owner in a conveyance or mortgage to a third person, it might be urged, with great force, that the intention was to have the instrument operate on the only interest which the party had. The argument would be forcible because no other reason could be given for so uniting in the deed of mortgage. But the plaintiff (Prudence E. Powers) was not thus situated. Her act was effectual as a release of all dower right in the land which the mortgage to the defendant embraced, and the instrument was in precisely the same form it would

have taken had she possessed or claimed no other interest in the premises. And this, we think, is the true exposition of the transaction."

In *Gillig* v. *Maass*, 28 N. Y. 291, the facts were very similar to the case just referred to, and the opinion says: "The mere fact that Mrs. Maass, the wife, united with her husband in the mortgage to Jones, under these circumstances, is not a ground in equity for postponing or rendering subordinate, her mortgage, to his. The spirit and intent of the act, and of the instrument which she executed, was to cut off her inchoate right of dower. This was the effect of the deed, and all that was within contemplation of the parties. The debt was the husband's, and the premises mortgaged were his. He was the mortgagor in fact, and she united in the deed, not to transfer any present right, but to cut off or convey an inchoate interest as the wife of the mortgagor in the premises mortgaged."

In *Kitchell* v. *Mudgett*, 37 Mich. 81, where the question presented in this case was discussed by Cooley, C. J., it is said: "Our statutes prescribe in what manner a married woman shall consent to a release of dower, and to a mortgage of the homestead, and their provisions have been followed in this instance. They leave the wife at liberty to convey her separate interests in land, as any other person might; but where the deed she executes is proper and suitable for the release of dower, and as a consent of the mortgaging of the homestead, and is such as she would be expected to execute if she had no independent interest, we cannot suppose that she had any further purpose in becoming a party to it." And, again referring to the claim that the wife had, by joining in the second mortgage, released her interest in a prior mortgage, it is said: "How can the court know that Mrs. Mudgett would have consented to release or postpone if it had been required of her? And how can the court compel her to do that which, with competent authority to assent to or reject, she might perhaps at that time have re-

jected?" And, in answer to these questions, it was held that the union of the wife in the second mortgage operated only to release her contingent right of dower, and did not affect any independent interest she had in the land.

Upon a similar state of facts in *Van Amburgh* v. *Cramer*, 16 Hun. 205, it was held that the wife, by joining in the deed of the husband's land to secure his debts, did not release the premises from the lien of a prior mortgage thereon then owned by her. The opinion says: "A mortgage is not either a *jus in re* or a *jus ad rem*. Whatever form may be given to the instrument, the mortgagor continues to be the owner of the land, and the mortgage is a mere lien. The mortgagee cannot, in any way, convey, devise, or encumber the land, for he has no estate in it, or title thereto, nor has he any right to the possession thereof. The mortgagor can maintain an action of trespass against him. The mortgage passes to executors, as a chose in action, and it is extinguished by payment or tender of the debt to which it is incidental. . . . As Mrs. Richards had no estate or interest in the land she could convey none, and her deed did not, for that reason, operate as a grant, nor did it operate as a bargain and sale, for she received no consideration therefor. Its only effect was to release her inchoate right of dower. . . . Such was manifestly the intention of the parties to the conveyance, and that must govern in the construction of the instrument. 1. The *habendum* is restricted to the premises conveyed and the appurtenances thereto. 2. There are no apt words to discharge or release a chose in action. 3. She executed and acknowledged the instrument as wife. 4. She had a dower right, and to release that was a proper and apparently the only purpose of her uniting in the conveyance."

The only distinction between the cases just quoted from and the one at bar is: In the former, in each case, the wife owned and controlled the debt; in this case, the debt is under the control of her trustee, Beard, and Mrs. Fulcher has only a life

estate in the debt; her trustee being responsible for its safe investment, and is the only proper person to release it, or any part of it.  It is manifest that appellants, in taking the second deed of trust from E. A. Fulcher, intended only to secure their debt on the land, with Mrs. Fulcher's relinquishment of dower therein; not a waiver of her interest in the prior deed of trust, nor an assignment of her interest therein.  Therefore the deed operated no further as to Mrs. Fulcher than a release of her contingent right of dower in the equity of redemption in the land owned by her husband and conveyed by the deed.

Catherine J. Beard having died, and Mrs. Fulcher being one of her distributees, the contention is made that she is estopped by her deed of July, 1897, from claiming any part of the debt of $1,550 secured to Catherine J. Beard by the deed of 1883 until the creditors secured by the deed of 1897 are satisfied.

What we have already said, and the authorities cited, fully answer that contention.  The deed of 1897 admits of no such construction, and, as before stated, has no other effect upon Mrs. Fulcher than a release of her contingent right of dower in the land.

But it is argued for appellants that section 2 of the Married Woman's Act of 1900 operates retrospectively, and validates the warranty in the deed of 1897 as to Mrs. Fulcher, and makes the warranty binding upon her personally.

This act provides: "A married woman may contract and be contracted with, sue and be sued, in the same manner and with the same consequences as if she were unmarried, whether the act or liability asserted by or against her shall have accrued before or after the passage of this act."  (Acts 1899-1900, p. 1240.)

Section 4 of that act repeals a number of sections of the Code, including section 2295, as amended by the act of 1895-'6, quoted above, but leaves intact section 2502, which, as before seen, expressly provides that a wife, uniting in a deed with her husband, shall not be bound by any covenant or warranty con-

tained therein unless made with reference to her separate estate
as a source of credit.

We do not question the right of the Legislature to pass
statutes which reach back to and change or modify the effect
of prior transactions, where such laws are not forbidden *eo
nomine* by the Constitution, and no other objection exists to
them than their retrospective character; but such an act cannot
operate to bind one who was never bound, either legally or
equitably, nor can it create a demand against one when no
such demand ever existed. Cooley Cons. Lim. 454.

In this instance, however, it is not necessary for us to discuss
the power of the Legislature to enact retrospective statutes, as
we see nothing in the act of March, 1900, *supra,* that admits
of the construction that it applies, or was intended to apply, to
a warranty in a deed in which the wife united for the purpose
only of relinquishing her inchoate right of dower in the prop-
erty conveyed, as was the case here, but it leaves section 2502 in
full force and effect, as did section 2295, in express terms. As
we have seen, no reference whatever is made in the deed of
1897 to Mrs. Fulcher's separate estate as a source of credit, or
in any way. Therefore the warranty therein, so far as Mrs.
Fulcher was concerned, was a nullity, and the deed must be
treated as to her as if it contained no warranty; nor can it
operate as an estoppel as to her. There is no inconsistency
whatever between the two acts referred to, and if the former is
repealed by the latter, it is, as counsel for appellants further
contend, by implication. Tested by the well-settled rules for
determining whether one statute repeals by implication another,
the act of March, 1900, *supra,* cannot be interpreted as re-
pealing section 2502 of the Code.

The repeal of statutes by implication is not favored by the
courts, for ordinarily, where a repeal is intended by the Legisla-
ture, it is declared in express terms. The presumption is always
against the intention to repeal where express terms are not
used. *Davis* v. *Creighton,* 33 Gratt. 696.

In *Frost* v. *Wenie*, 157 U. S. 46, the opinion by Mr. Justice Harlan says: "It is well settled that repeals by implication are not to be favored. And where two statutes cover, in whole or in part, the same matter, and are not absolutely irreconcilable, the duty of the court—no purpose to repeal being clearly expressed or indicated—is, if possible, to give effect to both. In other words, it must not be supposed that the Legislature intended by a later statute to repeal a prior one on the same subject, unless the last statute is so broad in its terms, and so clear and explicit in its words, as to show that it was intended to cover the whole subject, and therefore to displace the prior statute."

The question whether one statute repeals another by implication being one of legislative intent, the two statutes here in question not being irreconcilable, and the latter, although repealing in express terms a number of statutes upon the same general subject, making no reference whatever to the former (sec. 2502), it is inconceivable that the Legislature intended to repeal that section, and therefore effect is to be given to both statutes.

Upon the whole case, we are of opinion that the decree of the Circuit Court should be affirmed.

*Affirmed.*