Syllabus.

# Richmond

## BOYENTON v. COMMONWEALTH.

### January 16, 1913.

1. STATUTES—*Repeals by Implications—Banks and Banking—Case at Bar.*—The repeal of statutes by implication is not favored by the courts, and a later statute will not be presumed to repeal a former statute on the same subject unless, from the repugnancy of their provisions, that inference be necessary and unavoidable. If the two statutes are not absolutely irreconcilable, and no purpose of repeal is clearly expressed or indicated, it is the duty of the court to give effect to both, if possible. Applying this rule to the case at bar, the act of February 4, 1894, relating to deposits in insolvent banks, etc., is not repealed either by the act of January 4, 1904 (Code 1904, sec. 1171), or the act approved March 17, 1910, amending section 1171 of Code of 1904.

2. CRIMINAL LAW—*Sufficiency of Indictment—Insolvent Private Bankers—Receiving Deposits—Act February 12, 1894.*—Under the act of Assembly of February 12, 1894, making it a criminal offense for any private banker, or the employee of any private banker, to take and receive money from a depositor with actual knowledge that the said banker is at the time insolvent, an indictment is not sufficient which charges that the accused, being the cashier of a designated private bank, did with actual knowledge that the said bank was insolvent, receive the money of a depositor, without alleging who the owner or owners of the bank were, or that the accused was a private banker, or that he was the employee of a private banker. In order to bring the accused within the terms of the act, he must have been either a private banker himself, or the employee of a private banker at the time he received the deposit; and to charge him as a private banker it is necessary to charge that he was insolvent at the time he took and received the deposit, and to charge him as the employee of a private banker or bankers, it must be charged that said banker or bankers, or the owners of the private bank, were then insolvent. The allegation that the private bank designated was insolvent, without stating who its owner or owners were, is not a sufficient charge that the accused himself was insolvent if he was prosecuted as a private banker, nor that his principals were insolvent if he was being prosecuted as an employee.

3. CRIMINAL LAW—*Indictment—Sufficiency—Private Bankers—Insolvency.*—Under the above mentioned act of assembly, an indictment is not sufficient which charges that the accused and another were partners and carried on a private banking business under the style of the "Bank of Upperville," and in one count charges that the accused took and received money from X, a depositor, with actual knowledge that the firm doing business as the Bank of Upperville was insolvent, and in another count charges that the accused permitted X, a depositor, to deposit to his credit a named sum, with actual knowledge that the firm trading as the "Bank of Upperville" was insolvent. Neither count charges the accused, at the time the felonious act was alleged to have been committed, with actual knowledge that he and his partner, or either of them was insolvent. The insolvency of the partnership as such is not sufficient, if either the accused himself or his copartner was solvent.

4. CRIMINAL LAW—*Indictment—Statutory Offense—How Charged.*—Generally an indictment upon a statute must state all the circumstances which constitute the definition of the offense in the act, so as to bring the defendant precisely within it. The indictment should follow the terms of the statute, or use terms which show conclusively, or beyond a reasonable doubt, that the accused is guilty of the offense described in the statute. If all that is charged in the indictment may be true and yet the accused be not guilty of the offense for which he is prosecuted, the indictment is insufficient.

Error to a judgment of the Circuit Court of Fauquier county.

*Reversed.*

The opinion states the case.

*F. S. Collier* and *Lett & Massie,* for the plaintiff in error.

*Samuel W. Williams, Attorney-General,* and *Richard B. Davis, his assistant,* for the Commonwealth.

BUCHANAN, J., delivered the opinion of the court.

The plaintiff in error was prosecuted and convicted under the provisions of an act of Assembly approved Feb-

ruary 12, 1894, entitled "an act relating to the receiving of deposits by insolvent bankers, brokers or an officer of a bank." Acts 1893-4, p. 222.

That act is as follows:

"1. Be it enacted by the General Assembly of Virginia,. That any banker, whether State or private, any broker or officer of any trust or savings institution or of any State. bank, or employee of any private banker, who shall take and receive money from a depositor with the actual knowledge that the said banker, broker or the said trust or savings institution or the said bank is at the time insolvent, shall be guilty of embezzlement, and shall be punished by a fine double the amount so received and imprisoned from one to three years in the penitentiary for each offense.

"2. That any banker, whether State or private, any broker or officer of any trust or savings institution or of any State bank, who shall permit money to be received from a depositor with the actual knowledge that the said banker, broker, or the said trust or savings institution, or the said bank is at the time insolvent, shall be guilty of embezzlement, and shall be punished as in the preceding section.

"3. On the trial of any indictment under this act it shall be the duty of said banker or broker, or officer of any trust or savings institution, national, State or private bankers, · their agents or officers, to produce in court, on demand of the attorney for the Commonwealth, all books and papers of said banks, trust and savings institution or private bankers or brokers, as such, to be read as evidence on the trial of such indictment; provided, that in determining the question of the solvency of any such State bank, trust or savings institution the capital stock thereof shall not be considered a liability due by it.

"4. This act shall be in force from its passage."

The first error assigned is that the act quoted was re-

pealed by subsequent legislation, viz.: by an act approved
January 4, 1904, Acts of Assembly, 1902-3-4, ch. 578, pp.
905-910, which contains among other things the following
provision:

"Sec. 1171. Penalty for receiving deposits when bank
insolvent.—Any officer or employee of any bank, banking
institution, savings bank, savings society, or savings in-
stitution, who shall take and receive money from a de-
positor with the actual knowledge that the said bank, bank-
ing institution, savings bank, savings society, or savings
institution, is at the time insolvent, shall be guilty of em-
bezzlement, and shall be punished by a fine double the
amount so received and imprisoned not less than one or
more than three years in the penitentiary for each offense.
Any officer of any bank, banking institution, savings bank,
savings society, or savings institution, who shall permit
money to be received from a depositor with the actual
knowledge that the said bank, banking institution, savings
bank, savings society, or savings institution is at the time
insolvent, shall be guilty of embezzlement, and shall be
punished by a fine double the amount so received and im-
prisoned for not less than one nor more than three years
in the penitentiary for each offense.  On the trial of any
indictment under this section, it shall be the duty of any
such bank, banking institution, savings bank, savings so-
ciety, or savings institution, their agents or officers, to pro-·
duce in court, on demand of the attorney for the Common-
wealth, all books and papers of such bank, banking insti-
tution, savings bank, savings society, or savings institu-
tion, to be read as evidence on the trial of such indictment;
provided, that in determining the question of the solvency
of any such bank, banking institution, savings bank, sav-
ings society, or savings institution, the capital stock there-
of shall not be considered as a liability due by it."

And by an amendment of section 1171, approved March

17, 1910, Acts 1910, ch. 346, pp. 563, 569-70, by which the punishment provided for the offense for which the accused was indicted was reduced. It is conceded that there is no express repeal of the act of February 12, 1894, but the contention is that it has been repealed by implication.

The principles by which courts are governed in determining whether a statute is to be regarded as repealed by implication have been so often and fully discussed by this court that it is unnecessary to do more than refer to some of the cases on the subject. See *Fox Admr.* v. *Commonwealth,* 16 Gratt. (57 Va.) 1; *Hogan* v. *Guigon, Judge,* 29 Gratt. (70 Va.) 705; *Davis & Co.* v. *Creighton,* 33 Gratt. (74 Va.) 696; *Augusta, &c., Bank* v. *Beard's Admr.,* 100 Va. 687, 42 S. E. 694.

The general rule is that the repeal of a statute by implication is not favored by the courts, and that such a repeal will not be presumed unless from the repugnancy of the provisions that inference be necessary and unavoidable.

Section 1171 of the act of January 4, 1904, relied on as repealing the act of February 12, 1894, is part of a chapter concerning "Banks of Discount and Deposit," and provides for the government of banks and banking institutions (including savings banks, savings societies and savings institutions) then chartered and existing or that might thereafter be chartered under the laws of the State. (Sec. 1154.) All of the provisions of that chapter, unless it be section 1171, manifestly deal with banks, banking institutions, savings banks, savings societies or savings institutions incorporated or to be incorporated, and not with private bankers or brokers. The language of section 1171, if it stood alone, might with some plausibility be construed to include private bankers, but when read in connection with the other provisions, both preceding and following it in the same act, it cannot be said that it is necessarily

and unavoidably in conflict with the act of February 12, 1894, so far as it applies to private bankers or their employees.

"Where two statutes cover," as was said by the Supreme Court of the United States in *Frost* v. *Wenie,* 157 U. S. 46, 39 L. Ed. 614, 15 Sup. Ct. 532, quoted with approval by this court in *Augusta Nat. Bank* v. *Beard,* 100 Va. 687, 701, 42 S. E. 694, 698, "in whole or in part the same matter and are not absolutely irreconcilable, the duty of the court—no purpose to repeal being clearly expressed or indicated—is, if possible, to give effect to both. In other words, it must not be supposed that the legislature intended by the later statute to repeal a prior one on the same subject unless the last statute is so broad in its terms and so clear and explicit in its words as to show that it was intended to cover the whole subject, and therefore to displace the prior statute."

The court is of opinion that the act of February 12, 1894, is not repealed by the act of January 4, 1904, so far as it applies to private bankers and their employees; neither is it by the act of March 17, 1910, for that act (section 1170-e), expressly declares, in describing "Banks coming under the provisions of this act," that it "shall apply to and govern all chartered banks, including banks of deposit and discount, savings institutions, savings societies, trust companies and other corporations authorized to receive deposits or to do any branch of the banking business, other than that of banks organized under the laws of the United States, which last mentioned banks are, however, expressly included within the provisions of this act touching the course and conduct of banking and in so far generally as this State has the right to enact legislation in regard to such banks."

It is further declared by that section (1170-e) "that the word 'bank,' wherever it shall appear in this act, shall in-

clude banks of deposit and discount, savings banks, savings societies, savings institutions and trust companies now chartered, or which may hereafter be chartered, and to receive deposits, or to do any kind of a banking business as though each and every such institution was fully and accurately set out and mentioned."

With such a limitation upon the scope of the act and such a definition of the meaning of the word "bank" as used in the act, it is clear, we think, that the legislature did not intend by it to repeal, and that it does not repeal, the provisions of the act of February 12, 1894, so far as they apply to private bankers and their employees.

The next assignment of error is to be the action of the court in overruling the demurrer to the indictment and to each count thereof.

There are three counts in the indictment. The first, omitting the formal parts, is in the following language: "That W. H. Boyenton on the 24th day of October, 1910, in the said county of Fauquier, he the said W. H. Boyenton being then and there the cashier of the Bank of Upperville, a private bank, and a bank of deposit in said county, did, with actual knowledge that the said Bank of Upperville was at the time insolvent, feloniously take and receive from A. C. Reid, trading as A. C. Reid & Co., a merchant in said town of Upperville, and depositor in said bank, the sum of $65.33, as a deposit to the credit of the said A. C. Reid & Co., * * *"

The act of February 12, 1894, under which the indictment was found, makes it a criminal offense for any banker, whether State or private, any broker or officer of any trust or savings institution, or of any State bank, or employee of any private banker, to take and receive money from a depositor with the actual knowledge that the said banker, broker, or the said trust or savings institution, or the said bank is at the time insolvent. The first count in the indictment charges that the "Bank of Upperville" was

a private bank. In order, therefore, to bring the accused within the terms of the said act, he must have been, when he took and received the alleged deposit, either a private banker or an employee of a private banker. The count does not allege who the owner or owners of the Bank of Upperville were, or that the accused was a private banker, or that he was the employee of a private banker. It charges that he was the cashier of the bank, but he may have occupied that position either as owner, co-owner, or as an employee. Neither does it charge that he was insolvent when he took and received the deposit, a necessary allegation if he was a private banker; nor does it charge that the owner or owners of the bank, or the private banker or bankers were then insolvent, a necessary averment if he was being prosecuted as an employee of the banker or bankers. The allegation that the Bank of Upperville was insolvent, without stating who its owner or owners were, cannot be regarded as a sufficient charge that the accused himself was insolvent if he was prosecuted as a private banker, nor as a sufficient averment that his principal or principals were insolvent if he was being prosecuted as an employee.

The second and third counts charge in effect, as we construe them, that the accused and J. C. Boyenton were partners and carried on a private banking business at Upperville under the style of the Bank of Upperville. The second count charges that the accused took and received from Reid & Co., a depositor, money with actual knowledge that the firm doing business as the Bank of Upperville was inslovent. The third count charges that the accused permitted Reid & Co., a depositor, to deposit to their credit a named sum, with actual knowledge that the firm trading as the Bank of Upperville was insolvent. Neither of these counts charge the accused, at the time the felonious act was alleged to have been done, with actual knowledge that he and J. C. Boyenton, or either of them, was insolvent.

The contention of the Commonwealth is that if the partnership as such was insolvent at that time, and this fact was known to the accused, he was guilty under the statute, although neither he himself nor his co-partner were insolvent. The language of the statute is that the private banker himself, who takes and receives, or permits, money to be received under the conditions named in the act, must be insolvent at that time, and that he must have actual knowledge of such insolvency.

It is a general rule that an indictment upon a statute must state all the circumtsances which constitute the definition of the offense in the act, so as to bring the defendant precisely within it. The indictment should follow the terms of the statute, or use terms which show conclusively or beyond a reasonable doubt that the accused is guilty of the offense described in the statute. Com'th v. Hampton, 3 Gratt. (44 Va.) 590, 591; Com'th v. Peas, 2 Gratt. (43 Va.) 629, 632-641; Young's Case, 15 Gratt. (56 Va.) 664; Old's Case, 18 Gratt. (59 Va.) 915, 927; Cousin's Case, 19 Gratt. (60 Va.) 807, 811-12; Dull's Case, 25 Gratt. (66 Va.) 965, 974; Boyd's Case, 77 Va. 52, 54-5; Duff's Case, 92 Va. 769, 23 S. E. 643; 1 Wharton's Cr. Law (11th ed.), sec. 231.

All that is charged in these counts may be true, and yet the accused not be guilty of the offense for which he is prosecuted.

Other grounds of demurrer are assigned, but as the demurrer should have been sustained to each count for reasons hereinbefore stated, it is unnecessary to consider them as they are of a character not likely to occur in framing another indictment.

The judgment complained of must be reversed, the verdict of the jury set aside, the demurrer to each count of the indictment sustained, and the plaintiff in error discharged from further prosecution under the said indictment.

54                                              *Reversed.*