[No. 2316]

## IN THE MATTER OF THE APPLICATION OF P. V. ROVNIANEK FOR A WRIT OF HABEAS CORPUS.

[168 Pac. 327]

1. EXTRADITION—SUFFICIENCY OF INDICTMENT.

    Extradition cannot be properly granted unless the indictment against the accused contains every substantial element of the crime charged.

2. BANKS AND BANKING—INSOLVENT—PROSECUTION OF OFFICER— SUFFICIENCY OF INDICTMENT.

    An indictment under Purdon's Dig. Pa. (13th ed.) p. 942, par. 195, making it a crime for an officer of an insolvent bank to receive deposits, is fatally defective if the names of the owners of a private bank are not given and there is no allegation that each is insolvent.

*Habeas corpus* by P. N. Rovnianek, held in custody by John T. Burke, as agent of the State of Pennsylvania, under a warrant of the Governor of Nevada, upon the requisition of the Governor of Pennsylvania. **Discharged from custody.**

*Ayres & Gardiner, W. W. Griffin,* and *Augustus Tilden,* for Petitioner:

There is no showing that the petitioner was a fugitive from justice in such a sense as to estop the statute of limitations from running. (2 Purdon's Digest Pa., secs. 55, 56, pp. 2297, 2298.) During petitioner's absence from Pennsylvania, if he was absent, the statute of limitations was running against him, and he was in no sense a fugitive from justice. (*Appleyard* v. *Mass.,* 203 U. S. 227.)

The indictment states no offense against the Commonwealth of Pennsylvania. The indictment does not charge the petitioner with having received money from any one who is alleged to have been a depositor. This of itself renders the indictment fatally defective. (*Commonwealth* v. *Schall,* 5 York Legal Record, 137, 138; *Commonwealth* v. *Delamater,* 2 Pa. Dist. Ct. 118, 119; *Commonwealth* v. *Junkin,* 170 Pa. St. Rep. 199.) These decisions have laid down a positive rule as to the elements necessary to constitute the crime with which the petitioner is charged, and nowhere is it charged that the petitioner "took and

received the money as a deposit from a depositor"; neither is there any record, as required by the authorities stated, "that at the time the deposit was received the institution of which he was an officer was insolvent." In the absence of allegations setting forth these two missing elements, no offense is charged against the Pennsylvania statutes.

*Edward T. Patrick,* Deputy Attorney-General; *Wm. McKnight,* Deputy Attorney-General, and *R. M. Gibson,* for Respondent:

Two prerequisites must appear before the governor of the refuge state may lawfully issue his rendition warrant: (1) That the demanded person is substantially charged with a crime against the laws of the demanding state by an indictment or affidavit made before a magistrate, certified as authentic by the governor of the demanding state. (2) That the person demanded is a "fugitive from justice" of the demanding state, as defined by the courts of the United States. The first of these prerequisites is a question of law and open upon the face of the record to judicial inquiry on *habeas corpus.* (*Roberts* v. *Reilly,* 116 U. S. 80, 94; *Appleyard* v. *Mass.,* 203 U. S. 222, 229.) The second "is a question of fact which the governor of the state upon whom the demand is made must decide upon such evidence as he may deem satisfactory." (*Roberts* v. *Reilly, supra; Munsey* v. *Clough,* 196 U. S. 364, 372; *Appleyard* v. *Mass., supra; McNichols* v. *Pease,* 207 U. S. 100, 108.)

The guilt or innocence of the relator, or the motive of the prosecutor, is not a relevant subject of inquiry in extradition *habeas corpus* proceedings. (*Drew* v. *Thaw,* 235 U. S. 432, 439.) "There is no discretion allowed, no inquiry into motives." (*Kentucky* v. *Dennison,* 24 How. 66; *Pettibone* v. *Nichols,* 203 U. S. 192, 203; *Matter of Strauss,* 197 U. S. 324, 333; *People ex rel. Jourdan* v. *Donahue,* 84 N. Y. 438, 443.)

In passing upon an indictment forming the basis of an extradition warrant and demand, the indictment will be examined only to the extent of ascertaining whether it

substantially charges a crime; whether its allegations are good in substance. Its technical accuracy as a pleading will be left to the tribunal of the demanding state in which it is pending. (*Munsey* v. *Clough, supra; Drew* v. *Thaw, supra; Pierce* v. *Creecy,* 210 U. S. 387.)

A charge of crime is good, from the standpoint of extradition, even though the indictment shows on its face that the period fixed by the statute of limitations expired while the relator was in the state. (*Pierce* v. *Creecy, supra; Munsey* v. *Clough, supra; Reed* v. *United States,* 224 Fed. 378, 381.)

The burden of showing the invalidity of the warrant rests upon the prisoner. (*Bassing* v. *Cady,* 208 U. S. 386, 392; *McNichols* v. *Pease, supra; Appleyard* v. *Mass., supra; Roberts* v. *Reilly, supra; Hyatt* v. *Corkran,* 188 U. S. 691.)

By the Court, COLEMAN, J.:

This is an original proceeding in *habeas corpus.*

The return to the writ shows that the petitioner is held in custody by John T. Burke, as the duly appointed and constituted agent of the State of Pennsylvania, by reason of a certain executive warrant issued by the governor of this state, upon the requisition of the governor of the State of Pennsylvania, based upon three indictments returned against the petitioner by the grand inquest of Allegheny County, Pa.

The point which is urged in behalf of respondent is that each of the indictments charges a crime within the meaning of article 4, section 2, subdivision 2, of the constitution of the United States. Since the three indictments are, in legal effect, substantially the same, we will, in considering the matter, confine ourselves to one of them. Omitting the formal parts it reads:

" * * * P. V. Rovnianek, * * * * being then and there an officer of a certain private bank known as P. V. Rovnianek & Company Bank, unlawfully did then and there take and receive the sum of $55, lawful money of the government of the United States, from one John Dzurniak as a deposit in said bank, he, the said P. V. Rovnianek then and there knowing that the said P. V.

Rovnianek & Company Bank was at the time insolvent, with the intent in him, the said P. V. Rovnianek, to fraudulently embezzle the said sum of $55 lawful money as aforesaid."

Great reliance is placed by counsel for respondent upon the case of *Pierce* v. *Creecy*, 210 U. S. 387, 28 Sup. Ct. 714, 52 L. Ed. 1113, and our attention is especially called to certain language used by the court in that case, which we quote :

"There must be objections which reach deeper into the indictment than those which would be good against it in the court where it is pending. We are unable to adopt the test suggested by counsel, that an objection, good if taken on arrest of judgment, would be sufficient to show that the indictment is not a charge of crime. Not to speak of the uncertainty of such a test, in view of the varying practice in the different states, there is nothing in principle or authority which supports it. Of course, such a test would be utterly inapplicable to cases of a charge of crime by affidavit, which was held to be within the constitution. (*In the Matter of Strauss,* 197 U. S. 324, 25 Sup. Ct. 535, 49 L. Ed. 774.) The only safe rule is to abandon entirely the standard to which the indictment must conform, judged as a criminal pleading, and consider only whether it shows satisfactorily that the fugitive has been in fact, however inartificially, charged with crime in the state from which he has fled."

As we interpret that decision, the court held that the indictment or other paper setting forth the charge would be deemed insufficient in *habeas corpus* unless every element of the crime sought to be charged were alleged, for the court says:

"The indictment, whether good or bad, as a pleading, unmistakably describes every element of the crime of false swearing.  *    *    * "

1. This is our understanding of the law; that is, if the indictment does not allege every substantial element of the crime in question, no crime is in fact charged, and hence the petitioner should be discharged from the custody of the agent of the State of Pennsylvania. In

the matter of *Hyatt* v. *Corkran,* 188 U. S. 691, 23 Sup.
Ct. 456, 47 L. Ed. 657, the court said:

"As was said in *Roberts* v. *Reilly,* 116 U. S. 80, 95, 6
Sup. Ct. 291, 29 L. Ed. 544, it must appear to the gov-
ernor, before he can lawfully comply with the demand
for extradition, that the person demanded is substan-
tially charged with a crime against the laws of the
state from whose justice he is alleged to have fled, by
an indictment or an affidavit, etc.   *   *   *"

See also, *In Re Waterman,* 29 Nev. 288, 89 Pac. 291,
11 L. R. A. n. s. 424, 13 Ann. Cas. 926.

Certainly no one can be substantially charged with a
crime unless every element of the crime is stated. If
one element of a crime can be omitted from the indict-
ment, then why not every element? If this is done, can
a paper indorsed "Indictment" be said to be such in
the sense contemplated? It is clear, we think, that no
matter how inartistically an indictment may be drawn,
it may be good in a *habeas corpus* proceeding if it
charges every element of the offense in question. On
the other hand, no matter how artistically it may be
drawn, if it omits a single essential element of the
offense sought to be stated, it is not such a charge of a
crime as will justify the remanding of the person sought
to be extradited to the custody of the officer. Taking
this view, we must inquire if every element of the crime
sought to be charged is contained in the indictments
against the petitioner. The statute under which the
crime is sought to be charged reads:

"Any banker, broker or officer of any trust or savings
institution, national, state or private bank, who shall
take and receive money from a depositor with the knowl-
edge that he, they or the bank is at the time insolvent,
shall be guilty of embezzlement, and shall be punished
by a fine in double the amount so received, and impris-
oned from one to three years in the penitentiary."
(Purdon's Digest, 13th ed. p. 492, par. 195.)

2. Several reasons are urged as a basis for the con-
tention that the indictments in question do not contain
essential elements under the statute; but, as we view

the case, we deem it necessary to consider only one of them, and that is, Does the indictment charge that the deposit was accepted by one contemplated by the statute, and acting in the capacity contemplated? It is clear that before one can be guilty of a crime under the statute quoted he must receive a deposit while acting in some capacity designated by the statute. For instance, no one would be guilty of a crime under this statute if, while acting as the president of an insolvent corporation engaged solely in mercantile pursuits, he should accept for the corporation a deposit of money for safe-keeping; nor could an insolvent individual, engaged solely in the grocery business, who might accept a deposit of money for safe-keeping, be guilty of a crime under the statute quoted. The indictment in question negatives the idea that petitioner accepted a deposit while acting as an officer of a banking corporation; hence we are left to determine if the indictment alleges facts sufficient to charge a crime for receiving money as an officer of a private bank. A case which we think is squarely in point is that of *Roby* v. *State,* 41 Tex. Cr. R. 152, 51 S. W. 1114. In that case it was said:

"In order to constitute a good indictment   *   *   * it should have alleged that the Tyler Banking Company *   *   *   was a private bank or banking institution, and, if a private bank or partnership, the names of the owners or persons composing the partnership must be alleged.   *   *   *   The fact that the statute in question uses the expression 'private bank or banking institution' does not change this rule; nor does the fact that the 'Tyler Banking Company' did its business under the name of the 'Tyler Banking Company' make that mere name a legal entity; nor does it endow it with a personal existence distinct from or independent of the individuals who compose that banking company. In fact, it was simply a firm name, under which the individuals composing it did their banking business. If the individuals were solvent, the Tyler Banking Company was solvent; if they were insolvent, the Tyler

Banking Company was insolvent; and, in order to have a good indictment under the peculiar wording of this statute, it was necessary to allege the names of the persons composing the Tyler Banking Company."

The rule laid down by the language quoted is recognized as the correct one in the case of *Commonwealth* v. *Smith*, 11 Lanc. Law Rev. Pa. 350. That was a case in which Smith and one Graybille were charged as copartners engaged in carrying on a private bank under a firm name. The court said:

"The averment in the indictment follows the language of the act, and is in substantial compliance with the rules of criminal pleading."

See, also, *People* v. *Doty*, 80 N. Y. 225; *Boyenton* v. *Commonwealth*, 114 Va. 841, 76 S. E. 945.

It goes without saying that individuals must compose a private banking institution, and the name under which the private bank is operated is no indication as to the identity of the individuals who compose the institution; hence it will be readily seen that it is essential that the names of the persons comprising the private bank should be alleged in the indictment, or there is an utter failure to allege the existence of a private bank. It is also essential that it should be alleged that the individuals comprising the private bank are insolvent. (*Roby* v. *State, supra; Boyenton* v. *Commonwealth, supra.*)

If some of the very wealthy men of Pittsburg were conducting a private bank under the firm name of Penn Banking Company, and kept the assets of the copartnership separate and distinct from their individual assets, and the copartnership owed $1,000,000, and held assets of the value of $900,000, which they knew, and while the copartnership was in that financial condition one or all the partners should receive a deposit of money, and thereafter the copartnership should close its doors, if the theory of the respondent is sound, each of the copartners would be a criminal, even though he were able, ready, and willing to make good any deficiency. We are unable to accede to any such doctrine. This illustration shows the necessity of alleging the names of the

individuals who compose the bank, and their insolvency. Because of the failure of indictments in question to do this, no crime is charged.

It is ordered that P. V. Rovnianek be discharged from custody.

SANDERS, J., absent on account of sickness.

MCCARRAN, C. J., concurring:

I concur in the opinion and order.

I deem it proper to express my views on a principle of law applicable to and concurrent with that expressed by Mr. Justice COLEMAN.

The statute of Pennsylvania, defining the crime with which it is sought to charge petitioner in the indictment here in question, is as follows:

"Any banker, broker, or officer of any trust or savings institution, national, state or private bank, who shall take and receive money from a depositor with the knowledge that he, they or the bank is at the time insolvent, shall be guilty of embezzlement, and shall be punished by a fine in double the amount so received, and imprisoned from one to three years in the penitentiary." (Purdon's Digest, 13th ed. p. 942, par. 195.)

The term "officer," as used in the statute of Pennsylvania under which the indictment here in question was found, is a generic term, one embracing a general class. The specific capacity of the party sought to be charged as an officer should be alleged.

We were reminded by counsel for the State of Pennsylvania in his argument that our action in this matter might be reviewed by the Supreme Court of the United States, and it may not be amiss to look to the expression of that august tribunal for guidance. Moreover, we may with confident propriety turn to the decisions upon the subject and take light from the assertions of the courts of the demanding state.

In the case of *United States* v. *Hess,* 124 U. S. 483, 8 Sup. Ct. 571, 31 L. Ed. 516, the Supreme Court of the United States was called upon to consider the averments of an indictment by which it was sought to charge

a person with the violation of section 5480 of the Revised Statutes of the United States (U. S. Comp. St. 1916, sec. 10,385). The court, speaking through Mr. Justice Field, said:

"The statute upon which the indictment is founded only describes the general nature of the offense prohibited; and the indictment, in repeating its language without averments disclosing the particulars of the alleged offense, states no matters upon which issue could be performed for submission to a jury. The general, and, with few exceptions, of which the present is not one, the universal, rule on this subject is, that all the material facts and circumstances embraced in the definition of the offense must be stated, or the indictment will be defective. No essential element of the crime can be omitted without destroying the whole pleading. The omission cannot be supplied by intendment, or implication, and the charge must be made directly, and not inferentially, or by way of recital."

In this case the court referred to its former decision (*United States* v. *Cruikshank,* 92 U. S. 542, 23 L. Ed. 588), and approvingly quoted the language:

"It is an elementary principle of criminal pleading that where the definition of an offense, whether it be at common law or by statute, 'includes generic terms, it is not sufficient that the indictment shall charge the offense in the same generic terms as in the definition, but it must state the species; it must descend to particulars.' "

Supporting this same general rule we find the cases of *United States* v. *Carll,* 105 U. S. 611, 26 L. Ed. 1135, and *United States* v. *Simmons,* 96 U. S. 360, 24 L. Ed. 819.

In the indictment here in question the expression is used: "P. V. Rovnianek, * * * being then and there an officer of a certain private bank," etc. This, it is contended, is in the language of the statute. Under the cases cited and under the rule of criminal pleading there referred to it is not sufficient to charge the commission of a crime by using the language of the statute, where such language, as in the statute of Pennsylvania under

consideration, uses only the generic or general term, within which may be embraced any number of specific designations.

The indictment here in question, and by reason of which the executive warrant of the governor of this state issued, fails, in my judgment, to set forth the essential elements of a crime under the statute of Pennsylvania for reasons other than that heretofore considered. In this respect we need look no further than to the expression of the courts of the demanding state made with reference to the identical statute.

In the case of *Commonwealth* v. *Delamater et al.*, 2 Pa. Dist. R. 118, the court had before it the sufficiency of an indictment drawn under this code. There the court said:

"In order to sustain a conviction on an indictment under this statute it must be shown: (1) That the defendant was, at the time of the commission of the offense, a 'banker,' 'broker,' or 'officer of a trust or savings institution, national, state, or private bank.' (2) That he took and received the money *as a deposit from a depositor*. [We italicize.] (3) That at the time the deposit was received the 'banker' or 'broker,' or in case of an officer, the institution of which he was an officer, was insolvent. (4) That the defendant knew at the time he received the deposit that he or, in case of an officer, the institution was insolvent. (5) That the money so received was embezzled, that is, unlawfully appropriated to the use of the defendant, or of the institution of which he was an officer. These are material elements in the crime. The indictment must charge that they existed in the particular case."

There is no attempt in the indictment here under consideration to charge the receipt of money *as a deposit from a depositor*. Moreover, the indictment fails to assert that other essential element, declared so by the courts of the demanding state, actual insolvency. While this was but the decision of an inferior court, yet it appears to have remained undisturbed by the courts of

last resort. The Supreme Court of Pennsylvania, in the case of *Commonwealth* v. *Junkin*, 170 Pa. 194, 32 Atl. 617, 31 L. R. A. 124, referring to the statute under which this indictment is found, said:

"There are three essential elements, which the commonwealth must prove beyond a reasonable doubt, before the jury can find the guilt which the act makes punishable: (1) Actual insolvency at the time the money is received; (2) knowledge of the insolvency; (3) the receipt of money as a bank deposit."

By this declaration the courts of the demanding state have fixed at least three of the essential elements which it declared to be indispensable to establish the crime of embezzlement under this statute. The indictment here in question, and pursuant to which the executive warrant in this case issued, fails to measure up to the standard of requirements as thus asserted by the court of Pennsylvania.

Counsel for respondent appears to contend that it is not within the province of this court to investigate as to whether a crime is sufficiently alleged under the statute of Pennsylvania. They contend in this respect that that is a matter wholly within the province of the courts of Pennsylvania. This contention is, in my judgment, untenable. The right to take an individual from one state into another for the purpose of putting him on trial for a crime alleged is one which takes its authority from the constitution and statutes of the United States. The authoritative accusation of a crime against the laws of the demanding state is the principle underlying the right of extradition, the principle underlying the right and power of the governor of the asylum state to issue his executive warrant. The authoritative declaration of a crime against the laws of a demanding state must, of necessity, take the form of a pleading, regardless of the name or designation by which that pleading may be known. It is by this pleading that the crime itself is declared and designated. (*Roberts* v. *Reilly*, 116 U. S. 80, 6 Sup. Ct. 291, 29 L. Ed. 544.) To

every crime there are the essential elements. These are usually embraced within the general terms act and intention or criminal negligence. In charging an offense against the laws of the state, no essential element of the crime can be omitted without destroying the pleading. If the pleading is thus destroyed by reason of the omission of some essential element, then a crime is not alleged; and if a crime is not alleged, no extradition is authorized, and the requisition of the demanding state, as well as the executive warrant of the asylum state, is a nullity. In an instance such as this, where an individual may be taken from one state to another, or indeed may be taken across the continent under extradition proceedings based upon an indictment which the courts of the state to which he is to be taken have already declared to be insufficient to constitute a crime against the laws of that state, it appears to me to be not only inconsistent with the very fundamental elements of justice, but carrying argument to absurdity to say that the courts of the state from which he is to be taken may not, upon *habeas corpus* proceedings, inquire fully into the indictment or accusation or other pleading by which the crime is set forth, to determine indeed whether or not any crime is really alleged, and, if such is found wanting, may not restore the party to liberty.